### YEALOCK et al. v. YEALOCK.†

(Court of Civil Appeals of Texas. Dallas. Nov. 18, 1911. Rehearing Denied Dec. 16, 1911.)

1. TENANCY IN COMMON (§ 15*) — OUSTER — ADVERSE POSSESSION.

Where a tenant in common held peaceable, adverse, and exclusive possession of the lands, cultivating and enjoying the same, and claiming to be the sole owner for at least 10 years, she acquired title to her cotenant's interest by adverse possession.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. §§ 42–52; Dec. Dig. § 15.*]

2. TENANCY IN COMMON (§ 38*)—ADVERSE POSSESSION— INSTRUCTION.

In trespass to try title, in which defendant claimed to be a cotenant, an instruction that if the jury believed that plaintiff recognized that defendant had an interest in the land, and that plaintiff was not holding adversely, defendant was entitled to recover, was not objectionable as submitting to the jury as a doubtful issue whether defendant inherited an interest in the land from his father, and as requiring the jury, in order to return a verdict for defendant, to find that plaintiff both recognized defendant's interest in the land, and was not holding adversely to him.

[Ed. Note.—For other cases, see Tenancy in Common, Dec. Dig. § 38.*]

3. TENANCY IN COMMON (§ 38*)—ACTION— INSTRUCTIONS.

In trespass to try title, in which defendant claimed to be a cotenant, an instruction that if the jury believed that plaintiff recognized that defendant had an interest, if any, in the land in controversy, and that plaintiff was not holding adversely to him, she could not recover, was not misleading, to defendant's injury, since the jury must have understood that, before they would be warranted in returning a verdict for plaintiff on her claim of title by limitation, it was necessary that they should find that she had and held peaceable and adverse possession of the lands in controversy for the full period of 10 years, etc.

[Ed. Note.—For other cases, see Tenancy in Common, Dec. Dig. § 38.*]

4. TRIAL (§ 244*)—INSTRUCTIONS—PARTICULAR FACTS.

It is improper for the court in charging a jury to single out any one or more facts in the case, and by too prominently placing the same before the jury unduly impress them with the idea of its or their importance.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 577–581; Dec. Dig. § 244.*]

5. TRIAL (§ 260*) — INSTRUCTIONS — PREJUDICE.

Where, in trespass to try title, in which defendant claimed to be a cotenant, the court in its main charge specifically instructed that in no event should the jury return a verdict for plaintiff unless they believed she had held and claimed the land adversely to defendant, defendant was not prejudiced by the refusal to charge that if plaintiff did not claim the land adversely to defendant, but recognized his rights and claims thereto, then she could not hold and acquire his interest in the land, though she paid all the taxes due thereon, or defendant paid the taxes in her name and gave her the rents realized from the land, and the deed to the land under which they claimed was taken in her name and recorded, and the land was spoken of as hers.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

6. APPEAL AND ERROR (§ 1048*)—ADMISSION OF EVIDENCE—PREJUDICE.

In trespass to try title continued in the name of plaintiff's executor after her death against defendant's heirs and legal representatives, they were not prejudiced by the court permitting the executor to testify that in a casual conversation with his testatrix he heard her say something about the land in controversy, heard her talk about "her farm down there," and never heard her say anything about its belonging to her alleged cotenant, over an objection that it was a violation of Rev. St. 1895, art. 2302, prohibiting either party, in an action against heirs or legal representatives of a decedent, from testifying against the other as to any transaction or statement by testator.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4140–4145, 4158–4160; Dec. Dig. § 1048.*]

7. FRAUDS, STATUTE OF (§ 129*)—PAROL GIFT OF LAND—IMPROVEMENTS.

A parol gift of land cannot be sustained in the absence of proof that the donee had possession and made valuable improvements on the land with the knowledge and consent of the donor.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 287–292; Dec. Dig. § 129.*]

Appeal from District Court, Collin County; J. M. Pearson, Judge.

Trespass to try title originally brought by Emaline Yealock against I. T. Yealock and another. Pending the suit plaintiff died, and G. T. McDonough, her executor, was substituted. Defendant I. T. Yealock also died, and Lydia Yealock, as his executrix and widow, and Eskridge Yealock, his son, were substituted. Judgment for plaintiff and defendants appeal. Affirmed.

G. R. Smith, F. E. Wilcox, and Garnett & Hughston, for appellants. Abernathy & Abernathy, for appellee.

TALBOT, J. This is an action of trespass to try title brought originally by Emaline Yealock on the 21st day of December, 1907, against I. T. Yealock and J. T. Hay. Some time after the institution of the suit, both Emaline Yealock and I. T. Yealock died testate. G. T. McDonough was appointed executor of the will of Emaline Yealock,

---

and Lydia Yealock, the surviving widow of I. T. Yealock, was appointed executrix of his will. By an amended petition filed October 19, 1910, G. T. McDonough, as executor of the will of the said Emaline Yealock, made himself a party plaintiff to the suit, and the said Lydia Yealock individually and as executrix of the will of I. T. Yealock, deceased, Eskridge Yealock, a son of the said I. T. Yealock, and J. T. Hay, parties defendant. The suit was for the recovery of three tracts of land situated in Collin county, Tex., designated in the record as first, second, and third tracts, but was discontinued as to the third tract. Plaintiff's petition, after alleging that on the 1st day of January, 1906, Emaline Yealock was lawfully seised and possessed of the land sought to be recovered, and that on that day the defendants entered upon the same, and unlawfully ejected Emaline Yealock therefrom, and unlawfully withholds said lands from the plaintiff McDonough, who, as the executor of the said Emaline Yealock, was entitled to the possession thereof, alleges, among other things, that William Yealock, under whom plaintiff claims, was the former owner of said land; that said land was given to Emaline Yealock and that she was placed in possession of the same; that the said Emaline Yealock made permanent and valuable improvements on said land, and, claiming title thereto, had held continuous, peaceable, and adverse possession of the same, cultivating, using, and enjoying the same for more than 10 years next before the filing of this suit; that defendants had taken forcible possession of said lands, and refused to permit plaintiff to enter thereon and collect rents, etc. Defendants answered by general denial, plea of not guilty, and the statute of limitation of three, five, and ten years. The case was tried by a jury, and verdict and judgment rendered in favor of the plaintiff for the first and second tracts of land described in plaintiff's petition. From this judgment, the defendants have appealed.

[1] The first assignment of error is to the effect that the court erred in refusing to grant defendants a new trial because the verdict of the jury is contrary to the law and evidence, in that the undisputed evidence shows that the deceased, Emaline Yealock, and I. T. Yealock, were joint owners of the lands in controversy by inheritance from William Yealock, deceased, and there is no evidence in the case which shows that the said Emaline Yealock had acquired I. T. Yealock's interest or title by adverse possession under the statute of limitation of 10 years. We do not concur in this view of the evidence. On the contrary, we are clearly of the opinion that the evidence, though conflicting, was sufficient to justify the finding of the jury, which, under appropriate instructions of the court, was necessarily embraced in their verdict, that the said Ema-

line Yealock by her tenants had and held peaceable, adverse, and exclusive possession of said lands, cultivating and enjoying the same within the meaning of our statute, claiming to be the sole owner thereof for a period of at least 10 years prior to the 21st day of December, 1907, or to the time her exclusive right thereto was questioned by the answer of I. T. Yealock filed in this suit. This being true, we would not, under the uniform decisions of this state, be warranted in setting aside the verdict, even though the evidence, which we do not concede, preponderated against it. This view of the evidence also disposes adversely to appellants' contention of their second assignment of error, that the court erred in giving any charge on the statute of limitation of 10 years because there was no evidence upon which to predicate such a charge.

Appellants' third and fourth assignments of error, which are grouped in the brief, and complain of the second paragraph of the court's charge, will also be overruled. This clause of the court's charge fairly submitted the issue tendered by the pleadings and the evidence of title acquired by Emaline Yealock under the statute of limitation of 10 years. It without any material error grouped all the facts, and stated the conditions upon which such a title might be acquired, and told the jury, if those facts and conditions existed, to find for the plaintiff. It did not, in view of the allegations in plaintiff's petition to the effect that Emaline Yealock held and claimed said land in fee, and that on the 1st day of the year 1906 the said defendants entered upon said premises and ejected plaintiff therefrom, etc., in effect, tell the jury, as contended by appellants, that, if Emaline Yealock had held the land eight years before plaintiff alleged she was dispossessed by I. T. Yealock, the plaintiff was entitled to the whole of it. Nor is the charge subject to the criticism that it permitted the plaintiff to recover on his assertion of title by limitation if the jury should believe Emaline Yealock had held peaceable and adverse possession of the land within the meaning of the statute for a period of 10 years prior to the 21st day of December, 1907, although I. T. Yealock may not have known of such adverse claim but a few days or a short while before this suit was instituted. The only fair and reasonable construction of the charge is that it required the jury to believe before they would be authorized to find in favor of the plaintiff on his claim of title by limitation that I. T. Yealock had notice of Emaline Yealock's adverse claim of the whole of the lands in question for the full period of 10 years.

[2] The fifth and sixth assignments complain of so much of the third clause of the general charge to the jury as reads thus: "On the other hand, if you find and believe from the evidence that Emaline Yealock rec-

ognized that I. T. Yealock had an interest, if any, in the land in controversy, and that she was not holding adversely to him." It is contended that this portion of the court's charge is erroneous and misleading, in this: (a) Under it the jury had to find that Emaline Yealock recognized that I. T. Yealock had an interest in the land in the first place, and, further, that she was not holding adversely to him in order to defeat her title by limitation, whereas, if they found either of said facts to be true, she was not entitled to recover under her plea of limitation. (b) Said charge is further erroneous, in this: It submits to the jury as a doubtful issue whether or not I. T. Yealock inherited an interest in the land from William Yealock, and whether or not said Emaline Yealock recognized this fact. The charge is not in our opinion subject to the objection that it submitted to the jury as a doubtful issue whether or not I. T. Yealock inherited an interest in the land from William Yealock, and, if objectionable for the reason urged, that it required the jury to find, in order to return a verdict in favor of the defendants, both that Emaline Yealock recognized that I. T. Yealock had an interest in the land sued for, and that she was not holding adversely to him, still the error is not of such a material and prejudicial character as to require a reversal of the case. Emaline Yealock may have recognized that under the law her brother, I. T. Yealock, inherited an interest in the land, and yet have held the whole of it adversely to him in the manner and for the length of time prescribed by the statute necessary to mature her title thereto by the statute of limitation. Such a recognition would not be so inconsistent with her claim of adverse possession, which was amply sustained by the evidence, as to defeat such claim. Again, the charge is probably subject to the construction, and was so understood by the jury, that, if Emaline Yealock recognized that I. T. Yealock had an interest in the land and therefore did not hold the same adversely to him, to find for the defendants.

[3] In any view, however, we think the jury was not misled by the form of the charge to the injury of appellants. They must have understood that, before they would be warranted in returning a verdict in favor of the appellee on his claim of title by limitation, it was absolutely necessary that the conclusion should be reached by them from the evidence that Emaline Yealock had and held peaceable and adverse possession of the lands in controversy for the full period of 10 years prior to the date mentioned in the charge.

The sixth assignment of error complains of the court's refusal to give the following instruction: "If you find and believe from the evidence that Emaline Yealock was not claiming the land adversely, and hostile to I. T. Yealock, but that she recognized his rights and claims to the same, then you are instructed that she cannot hold and acquire his interest in the land, even though you may believe she paid all the taxes due on it, or that I. T. Yealock paid the taxes in her name and gave her all the rents realized from said land, and even though the deed from Mrs. Bellamy was taken in her name and recorded in the record of deeds of this county. And even though in speaking of the land it was called Emaline Yealock's land." This charge was probably upon the weight of the evidence and misleading.

[4] It is improper for the court to single out any one or more facts in a case, and, by too prominently placing the same before the jury, unduly impress them with the idea of its or their importance. To do so has frequently been held to be upon the weight of the evidence.

[5] If, however, we are mistaken in this, then the defendants suffered no injury by the refusal of the special charge, because the jury must have understood from the court's charge relating to the subject that in no event would they be authorized to return a verdict in favor of the plaintiff, unless they believed Emaline Yealock had held and claimed the land adversely to I. T. Yealock.

[6] G. T. McDonough, plaintiff here and executor of the will of Emaline Yealock, was permitted to testify, over the objections of the defendants, that in a casual conversation with Emaline Yealock, deceased, he heard her say something about whose farm it (the one in controversy) was; that he lived within a block of Miss Emaline Yealock and was down there frequently, and heard her talk about her farm down there, what it was making and such as that just incidentally. The witness was further permitted to answer "No" to the question, "Did you ever, at any time, hear her say anything about it belonging to I. T. Yealock or his having any interest in it?" This testimony was objected to on the ground that it was inhibited by article 2302 of the Revised Statutes. We think there was no material or reversible error in this ruling of the court. The testimony complained of was so unimportant, so insufficient to establish any material fact in the case, or to base any finding upon essential to a recovery ·by plaintiff that its admission cannot be regarded as a damaging violation of our statute which inhibits, in actions by or against the heirs or legal representatives of a decedent, either party from testifying against the other as to any transaction with or statement by the testator. The statements of the plaintiff McDonough not being hurtful to the defendants, their admission does not constitute reversible error.

There are several assignments of error complaining of the court's refusal to give certain special charges requested by the appellants which have not been discussed. These charg-

es were either not called for by the evidence, were upon the weight of the evidence, or sufficiently covered by the court's general charge and were therefore properly refused.

[7] Appellee's contention to the effect that he was entitled to recover on his plea of a parol gift of the lands to Emaline Yealock is not sustained. The evidence was not sufficient to support this plea, and no such question was submitted to the jury. It may have been sufficient to justify a finding that William Yealock orally gave the land to Emaline Yealock to take effect in præsenti, and recognized her possession of the same in his lifetime, but we find no evidence in the record tending to show that Emaline Yealock, upon the faith of such gift, made valuable improvements upon the land at such time as to take the case out of the operation of the statute of frauds. As said by this court in Hammond v. Hammond, 49 Tex. Civ. App. 482, 108 S. W. 1024, it is absolutely essential to the validity of a parol gift of land in this state that possession be given and valuable improvements made by the donee with the knowledge or consent of the donor. There is no proof that such improvements were made by Emaline Yealock with the knowledge or consent of William Yealock. On the contrary, it appears that whatever improvements she made were made after the death of the said William Yealock.

Finding no reversible error in the record, the judgment of the court below is affirmed.

---

HOME TELEPHONE CO. v. PEOPLE'S TELEPHONE & TELEGRAPH CO. et al.

(Supreme Court of Tennessee.   Dec. 16, 1911.)

1. COURTS (§ 93*)—STARE DECISIS.
When statutes have long been treated by the courts as constitutional, and important rights have been based thereon, the courts may thereafter refuse to consider their constitutionality.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 336–339; Dec. Dig. § 93.*]

2. TELEGRAPHS AND TELEPHONES (§ 34*)—REGULATION—CONSTITUTIONALITY.
Acts 1885, c. 66, § 10, requires every telegraph and telephone company under penalty of $500 for each refusal to transmit to localities on its lines, such messages as may be tendered at the customary prices without discrimination, and section 11 requires every telephone company to supply all applicants for telephone connection with facilities without discrimination, provided they comply with the reasonable regulations of the company, and prohibits the imposition of any restriction, which is not imposed impartially or any discrimination by requiring that the facilities shall not be used in the business of the applicant. *Held*, that the statutes were not unconstitutional in any respect.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 21; Dec. Dig. § 34.*]

3. TELEGRAPHS AND TELEPHONES (§ 34*)—EXCESSIVE PENALTIES.
The act is not void as violating Const. art. 1, § 16, prohibiting the imposition of excessive fines or unusual punishments; it being the duty of one complaining of a violation to sue for the first violation, and not to wait until a large amount of penalties have accumulated.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 21; Dec. Dig. § 34.*]

4. TELEGRAPHS AND TELEPHONES (§ 34*)—DISCRIMINATION IN FACILITIES—STATUTORY PROVISIONS.
The act is merely declaratory of the common law as to discriminations.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 21; Dec. Dig. § 34.*]

5. TELEGRAPHS AND TELEPHONES (§§ 12, 16*)—RIGHT OF PHYSICAL CONNECTION.
While a telephone company is a common carrier of intelligence, and must give the same service impartially and without unreasonable discrimination to all applying, neither under Acts 1885, c. 66, §§ 10, 11, nor at common law, is a telephone company bound to permit another such company to make physical connection with its lines and switchboards for use as its subscribers use them, nor would the execution of a contract between two telephone companies giving such right of physical connection for an indefinite time prevent the owning company from severing such connections.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 10; Dec. Dig. §§ 12, 16.*]

6. TELEGRAPHS AND TELEPHONES (§ 16*)—CONTRACTS BETWEEN COMPANIES—PARTIES.
A joint traffic arrangement between two telephone companies giving one of them the right of physical connection with the other's lines would not confer such right upon other companies not parties to the contract.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 10; Dec. Dig. § 16.*]

7. EMINENT DOMAIN (§ 2*)—TAKING PROPERTY WITHOUT COMPENSATION.
To give a contract between two telephone companies for physical connection with the lines and switchboards of one of them for an unlimited time, the effect of requiring such connection to continue at the will of the connecting company upon payment of the stipulated toll would be the taking of property for public use without compensation.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 3–12; Dec. Dig. § 2.*]

8. CONSTITUTIONAL LAW (§ 298*) — TELEGRAPHS AND TELEPHONES (§ 4*)—DUE PROCESS OF LAW.
To give a contract between two telephone companies for physical connection with the lines and switchboards of one of them for an unlimited time, the effect of requiring such connection to continue at the will of the connecting company upon the payment of the toll originally stipulated would be the taking of property without due process of law.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 847; Dec. Dig. § 298;* Telegraphs and Telephones, Cent. Dig. § 2; Dec. Dig. § 4.*]

Appeal from Chancery Court, Knox County; Will D. Wright, Chancellor.

Suit by the Home Telephone Company against the People's Telephone & Telegraph