### PACIFIC TELEPHONE & TELEGRAPH CO. v. ANDERSON et al.

(District Court, E. D. Washington, N. D.   February 13, 1912.)

#### No. 1,584.

1. TELEGRAPHS AND TELEPHONES (§ 34*)—DUTY TO FURNISH CONNECTIONS TO OTHER COMPANIES—CONTRACTS.

While a telegraph or telephone company is a common carrier of intelligence and must give the same service on the same terms to all applicants without discrimination, a telephone company is not bound to give another company, or its patrons, connection with its switchboard on an equality with its own patrons, such connection being a privilege to be accorded only as the result of private contract or in obedience to some constitutional or statutory provision; nor does the fact that it has granted such right to one company entitle others to the same privilege.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 21; Dec. Dig. § 34.*]

2. MONOPOLIES (§ 12*)—CONTRACTS BETWEEN TELEPHONE COMPANIES—VALIDITY.

A contract between a local telephone company and one operating long distance lines, by which a connection was established between them, and for an exclusive interchange of business, the local company agreeing that no other company should be permitted to make connection with its lines, and each binding itself to send messages only over the lines of the other to points on such lines, is not illegal as creating a monopoly, but is valid and enforceable.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 10; Dec. Dig. § 12.*]

In Equity.   Suit by the Pacific Telephone & Telegraph Company against Roy S. Anderson, Ella May Anderson, John W. Fisher, Charles B. Selby, the Home Telephone & Telegraph Company of Spokane, Wash., the Interstate Telephone & Telegraph Company, Limited, of Spokane, Wash., the Security State Bank, and Oscar Schirber.   On motion for preliminary injunction.   Granted.

Post, Avery & Higgins, for complainant.
John F. Davies and L. B. Cornell, for defendants.

RUDKIN, District Judge. It appears from the bill of complaint in this case:  That the complainant, a citizen of the state of Cali-

fornia, operates telephone exchanges in nearly all of the cities and towns of this state, and long distance toll lines connecting practically all of such cities and towns; that on the 13th day of October, 1903, the town of Newport passed an ordinance granting to the Pacific States Telephone & Telegraph Company, its associates and assigns, a right·to erect, maintain, and operate, in and under the streets, alleys, and thoroughfares thereof, poles, wires, and other appliances and conductors for the transmission of electricity for telephone purposes; that a telephone exchange and system was erected in pursuance of this franchise, of which the complainant has become the lessee; that subsequently said telephone property, exclusive of the franchise, was sold and conveyed to one Craig, who operated the same in connection with the system of the complainant under a toll line contract until on or about the 15th day of August, 1910; that on the latter date Craig sold and conveyed the telephone exchange and property, exclusive of the franchise, to the defendant Anderson, with the knowledge and consent of the complainant, and at the same time and place, and as a part of the same transaction, the complainant entered into a contract with the purchaser which contained, among others, the following provisions:

"First. The Pacific Company agrees to and hereby does sublicense to R. S. Anderson as the exclusive territory of the said R. S. Anderson for telephone purposes, except the business between points in said territory which are already connected by the toll lines of the Pacific Company, the following territory in Stevens county, Wash., to wit, the town of Newport, and a radius of five (5) miles from the center thereof, a map of which territory is hereto attached and made a part hereof; and R. S. Anderson agrees that he will not, during the period of this agreement, extend his toll lines or establish any exchange or exchanges outside of the territory above described, nor connect with any toll lines, exchange or exchanges, either within or without said territory other than those of the Pacific Company and its allied companies, without the consent in writing of the Pacific Company.

"Second. The Pacific Company agrees that it will not, during the period of this agreement, build any exchanges or toll lines or connect with any exchanges or toll lines, in the territory above described and hereby sublicensed, in competition with the toll lines or exchanges of R. S. Anderson; provided, however, that the Pacific Company shall have the privilege of furnishing or sublicensing other parties to furnish exchange or toll line service in any portion of the territory of R. S. Anderson, in case the latter fails to furnish such service within six (6) months after written request from the Pacific Company so to do; and provided further that the Pacific Company shall have the right to build lines through the territory of R. S. Anderson for the purpose of handling toll business which does not compete with business of R. S. Anderson; and provided further that the Pacific Company shall continue to handle all toll business between points in the territory herein sublicensed which are at present connected by its own toll lines.

"Third. It is mutually agreed that the connecting point between the lines of the Pacific Company and the lines of the said R. S. Anderson shall be at the first or office pole of R. S. Anderson at Newport, Wash., and R. S. Anderson agrees to make such proper switchboard or other connection for direct communication with his customers as may be requested by the Pacific Company, and it is mutually agreed that telephone and telegraph business between points on lines of the Pacific Company and stations on the lines of the said R. S. Anderson shall be interchanged between the parties hereto, and each of the parties hereto agrees that it will, so far as it may lawfully do so, turn over to the other, all telephone and telegraph business, which it may be able to obtain or control, directed to points on lines of the other party.

"Fourth. The charge for communications passing over the lines of both parties, shall be the tolls of the Pacific Company added to the tolls of R. S. Anderson, and each party agrees to collect the entire charge for messages originating upon its lines, and to render a detailed statement and make full remittance to the other, on or before the fifth day of each month, for the proportion of all tolls collected at its offices and due the other during the month next preceding, provided, however, that in consideration of operating the terminals of the Pacific Company's lines at Newport, Wash., R. S. Anderson shall be entitled to receive a commission of fifteen per cent. (15%) on each paid communication originating at said Newport, Wash., and going entirely over the lines of the Pacific Company."

"Twelfth. If at any time prior to or at the expiration of this agreement, R. S. Anderson should desire to sell or otherwise dispose of his exchange or toll line plant or any part thereof covered by this agreement, the Pacific Company shall have the prior right of purchase upon terms equally as favorable as those offered to any other prospective purchaser."

The bill further charges that the Newport Telephone Exchange and system was operated under this agreement until the 9th day of October, 1911; that on the latter date the defendants Anderson and wife, by bill of sale, conveyed the same to the defendant Selby, who was acting as agent and trustee for the defendant Interstate Telephone Company, Limited, or the Home Telephone & Telegraph Company; that immediately thereafter the defendant Selby, by bill of sale, conveyed the same to the defendant the Interstate Telephone Company, Limited; that the defendant Interstate Telephone Company, Limited, took possession of such exchange and property, and since that time has managed and operated the system, has made physical connection between the long distance lines of the Interstate Telephone Company and said exchange at Newport, and has caused messages and conversations to be transmitted to Spokane through said exchange over the toll lines of the Interstate Telephone Company, Limited, and through the exchange of the Home Telephone & Telegraph Company, of Spokane, aforesaid; all in violation of the agreement between the complainant and the defendant Anderson; that the defendants Selby and the Interstate Telephone Company, Limited, purchased the Newport Exchange from Anderson, with full knowledge and notice of the contract between the complainant and Anderson and of the rights of the complainant thereunder; that the sale from Anderson to Selby was made without notice to the complainant and without giving the complainant an opportunity to exercise its prior right to purchase the same, as provided in the Anderson contract.

The bill contains numerous other allegations which are not material to the consideration of the motion for a temporary injunction which is now pending. The relief asked by the bill at this time is a temporary injunction to re-establish the rights of the complainant under its contract, pending the suit, and for the appointment of a receiver to operate the Newport system.

The application was heard on oral testimony taken in open court, by consent of parties. The principal allegations of the bill are established by written and record evidence, leaving only the question of fact whether the defendants purchased from Anderson, with notice of the contract between the complainant and Anderson, and the rights

of the complainant thereunder. This issue must be found in favor of the complainant as it is established by the overwhelming weight of the testimony. The only question left for consideration is one of law, viz., the validity of the Anderson contract.

The defendants assail the validity of this contract, and their position can best be stated in their own language:

"The provisions of the agreement, pertinent to this discussion, are:

"(1) The Pacific Company agrees to and hereby does sublicense to R. S. Anderson, as the exclusive territory of said R. S. Anderson for telephone purposes, except the business points in said territory which are already connected by the toll lines of the Pacific Company, the following territory in Stevens County, Wash., to wit, the town of Newport, and a radius of five (5) miles from the center thereof, a map of which territory is hereto attached and made a part hereof; and R. S. Anderson *agrees that he will not, during the period of this agreement, extend his toll lines or establish any exchange or exchanges outside of the territory above described, nor connect with any toll lines, exchange or exchanges, either within or without said territory, other than those of the Pacific Company and its allied companies,* without the consent in writing of the Pacific Company.

"(2) The Pacific Company *agrees* that it will not, during the period of this agreement, build any exchanges or toll lines, *nor connect with any exchange or toll lines, in the territory above described and hereby sublicensed, in competition with the toll lines or exchanges of R. S. Anderson;* provided, however, that the Pacific Company shall have the privilege of furnishing or sublicensing other parties to furnish exchange or toll line service in any portion of the territory of R. S. Anderson, *in case the latter fails to furnish such service within six (6) months after written request from the Pacific Company so to do; and provided further that the Pacific Company shall have the right to build lines through the territory of R. S. Anderson for the purpose of handling toll business which does not compete with the business of R. S. Anderson; and provided further that the Pacific Company* shall continue to handle all toll business between points in the territory herein sublicensed which are at present connected by its own toll lines.

"(3) * * * And it is mutually agreed that telephone and telegraph business between points on the lines of the Pacific Company and stations on the lines of the said R. S. Anderson shall be interchanged between the parties hereto, and each of the parties hereto agrees that it will, *so far as it may lawfully do so,* turn over to the other all telephone and telegraph business *which it may be able to obtain or control,* directed to points on the lines of the other party.

"(4) The charge for communications passing over the lines of both parties shall be *the toll of the Pacific Company, added to the tolls of R. S. Anderson,* and each party agrees to collect the entire charge for messages originating upon its lines."

It is then urged that these several provisions are contrary to public policy and void because:

"Each party thereby:

"(1) Disables itself from performing fully its functions as a common carrier.

"(2) Binds itself to do an unlawful thing—to give physical connection with the lines and exchanges of the other party to the agreement, and *to deny such and equal facilities to any and all other parties similarly situated.*

"(3) Binds itself to do its utmost to establish and maintain for the two contracting parties a *monopoly* of the telephone and telegraph business within a certain district—the town of Newport, in Washington and Idaho, and the adjacent country within a radius of five (5) miles.

"(4) To further stifle competition and strengthen the monopoly, the Pacific Company also agrees that it will not build any exchanges or toll lines, *or connect with any exchanges or toll lines, in such district,* in competition with the toll lines or exchange of R. S. Anderson."

[1] Cases might be cited almost without number holding that telegraph and telephone companies are common carriers of intelligence and must give the same service on the same terms to all who apply therefor, without partiality or unreasonable discrimination, and such is the import of a vast majority of those cited by the defendants. Within this rule the defendants have the right to demand from the complainant company and from the Anderson Company the same services that are accorded to the general public, and on the same terms and conditions; but such is not the right they are seeking to enforce or maintain in this case. All the authorities agree that at common law each telephone company is independent of all other telephone companies, save for the duty to receive and forward to any point on its line messages received from such other company or companies; and hence that it is not bound to accord to any such outside organization or its patrons connections with its switchboard on an equality with its own patrons; that such connection is a privilege to be accorded only as the result of private contract or in obedience to some constitutional or statutory provision. State v. Cadwallader, 172 Ind. 619, 87 N. E. 644, 89 N. E. 319; Home Telephone Co. v. Sarcoxie Light & Telephone Co. (Mo.) 139 S. W. 108; Home Telephone Co. v. People's Telephone Co., 141 S. W. 845, decided December 16, 1911, by the Supreme Court of Tennessee.

[2] I do not understand that this rule is questioned by the defendants, but they earnestly maintain that, because the Anderson Company made physical connection with the complainant company, it was bound by the common law to grant the same privileges to any other individual or company on the same terms and conditions. I cannot concede that such is the rule of the common law. Only two cases have been found which tend in the remotest degree to support this extension of the common-law obligation. The first is State v. Cadwallader, supra, from the Supreme Court of Indiana, and the second, Home Telephone Co. v. Granby Telephone Co., 147 Mo. App. 216, 126 S. W. 773, from the St. Louis Court of Appeals. In the Indiana case the question here presented was not involved, because the court had under consideration the existence and validity of a contract and not the rights of third parties independent of contract. The second case was overruled by the Supreme Court of Missouri in Home Telephone Co. v. Sarcoxie Light & Telephone Co., 139 S. W. 108.

Where a public service corporation enters into private contracts with others in furtherance of its business, I find no warrant for holding that its public duties are in all cases extended to the full scope of the private contract.

In Atchison, etc., R. R. Co. v. Denver, etc., R. R. Co., 110 U. S. 667, 4 Sup. Ct. 185, 28 L. Ed. 291, it was claimed that, because two railroad companies had established a junction and a joint station, another company thereafter organized was entitled to the same privileges. In answer to this contention the court said:

"A railroad company is prohibited both by common law and by the Constitution of Colorado from discriminating unreasonably in favor of or against another company seeking to do business on its road; but that does not necessarily imply that it must stop at the junction of one and interchange busi-

ness there, because it has established joint depot accommodations and provided facilities for doing a connecting business with another company at another place. A station may be established for the special accommodation of a particular customer, but we have never heard it claimed that every other customer could, by a suit in equity, in the absence of a statutory or contract right, compel the company to establish a like station for his special accommodation at some other place. Such matters are and always have been proper subjects for legislative consideration unless prevented by some charter contract; but, as a general rule, remedies for injustice of that kind can only be obtained from the Legislature. A court of chancery is not, any more than a court of law, clothed with legislative power. It may enforce, in its own appropriate way, the specific performance of existing legal obligations arising out of contract, law, or usage; but it cannot create the obligation. In the present case, the Atchison, Topeka & Santa Fé and the Denver & Rio Grande Companies formed their business connection and established their junction or joint station long before the Denver & New Orleans road was built. The Denver & New Orleans Company saw fit to make its junction with the Atchison, Topeka & Santa Fé at a different place. Under these circumstances, to hold that, if the Atchison, Topeka & Santa Fé continued to stop at its old station, after the Denver & New Orleans was built, a refusal to stop at the junction of the Denver & New Orleans was an unreasonable discrimination as to facilities in favor of the Denver & Rio Grande, and against the Denver & New Orleans, would be in effect to declare that every railroad company which forces a connection of its road with that of another company has a right, under the Constitution or at common law, to require the company with which it connects to do a connecting business at the junction, if it does a similar business with any other company under any other circumstances. Such, we think, is not the law. It may be made so by the legislative department of the government, but it does not follow, as a necessary consequence, from the constitutional right of a mechanical union of tracks or the constitutional prohibition against undue or unreasonable discrimination in facilities."

In the Express Cases, 117 U. S. 1, 6 Sup. Ct. 542, 628, 29 L. Ed. 791, it was held that railroad companies are not obliged, either by the common law or by usage, to do more as express carriers than to provide the public at large with reasonable express accommodations; and are not obligated, in the absence of statute, to furnish to all independent express companies equal facilities for doing an express business upon their passenger trains.

In Union Pac. Ry. Co. v. United States, 59 Fed. 813, 827, 8 C. C. A. 282, 296, certain provisions of the contract between the Western Union Telegraph Company and the Union Pacific Railway Company were attacked on the ground that they tended to create a monopoly; but in answer to this contention the court said:

"The only exclusive privileges that the telegraph company acquired by this contract, so far as we are able to see, was the right to connect its wires with the railway company's station houses and to maintain offices therein; also, the right to have the wires thus connected with such stations operated by employés of the railway company, and the right, under the ninth clause, to have poles and telegraph materials transported and distributed free of charge along the Pacific Railway. For all of these privileges the railway company undoubtedly received what it deemed an adequate consideration in the way of advantages derived from other provisions of the contract, and the privileges in question do not appear to us to be of such a nature that the railway company was bound, either under then existing acts of Congress or on general principles of law, to confer them equally upon all other telegraph companies" —citing Express Cases, 117 U. S. 1, 6 Sup. Ct. 542, 628, 29 L. Ed. 791; Pullman Palace Car Co. v. Mo. Pac. Ry. Co., 115 U. S. 587, 6 Sup. Ct. 194, 29 L. Ed. 499.

See, also, Home Telephone Co. v. People's Telephone & Telegraph Co., supra, a case in many respects similar to the one at bar.

It is a common practice among railroads to permit other companies to operate trains over their lines on terms agreed upon between them; but it has never been held or intimated that by such an act a company loses all control over its property or obligates itself to grant similar privileges to every other company that may apply therefor. Any such rule would wrest from the proper officers of the corporation the power to manage and control its affairs, and would be destructive of private property rights.

The defendant companies had therefore no right to demand a physical connection with the Anderson line simply because that right had been accorded to another, and they certainly have no such rights under the statute of this state, for that statute vests the power and discretion to direct physical connection in the Public Service Commission. Laws Wash. 1911, p. 585, § 73.

Other provisions of the Anderson contract are challenged on the ground that they tend to create a monopoly, but these latter provisions are clearly separable, and I deem it unnecessary to discuss or consider them. They are very similar to the provisions of the Western Union contract involved in Union Pac. Ry. Co. v. United States, supra.

For the foregoing reasons I am of opinion that the contract between the complainant and the defendant Anderson is legal and binding, and that the complainant is entitled to a decree re-establishing its rights under that contract and to a receiver for the Newport system, pending further proceedings.

Let an order be entered accordingly.