## OKLAHOMA–ARKANSAS TELEPHONE CO. v. SOUTHWESTERN BELL TELEPHONE CO. *

No. 8721.

Circuit Court of Appeals, Eighth Circuit.

Dec. 20, 1930.

*Certiorari denied 51 S. Ct. ——, 75 L. Ed. ——.

James B. McDonough, of Ft. Smith, Ark. (Joseph W. House, Jr., and Harry E. Meek, both of Little Rock, Ark., and James B. McDonough, Jr., of Ft. Smith, Ark., on the brief), for appellant.

Claude Nowlin and E. W. Clausen, both of St. Louis, Mo. (Hill, Fitzhugh & Brizzolara, of Ft. Smith, Ark., Edward B. Downie, of Little Rock, Ark., and Joseph W. Jamison, of St. Louis, Mo., on the brief), for appellee.

Before STONE and VAN VALKENBURGH, Circuit Judges, and OTIS, District Judge.

VAN VALKENBURGH, Circuit Judge.

November 30, 1923, appellant and appellee entered into a contract reciting that the latter was then operating exchanges and toll lines in the states of Oklahoma and Arkansas, and that the latter was operating exchanges at Poteau, Heavener, Howe, and Wister in Oklahoma, and toll circuits extending from Poteau to Ft. Smith, Ark., and to said other named exchanges in Oklahoma. This contract provided that appellee should connect the toll lines of appellant to its toll board at Ft. Smith, Ark., and should own and maintain all central office equipment for such connections. Appellant should connect the toll lines of appellee to its toll board at Poteau, Okl., and should own and maintain all central office equipment for such connections. Calls originating in appellant's system for Ft. Smith and points east were to be routed over appellant's line to Ft. Smith, and calls originating in Ft. Smith, and at points east, for points in appellant's system, were to be routed over appellee's line to Poteau. The contract fixed the compensation that each company was to receive for services performed under the terms thereof, provided that it should remain in effect for the period of one year, "and thereafter until the expiration of thirty days after written notice of determination to terminate same is given by either party to the other," and superseded, canceled, and set aside "any and all other agreements or practices providing for interchange of traffic between Southwestern Bell Telephone Company, or its predecessors, and the Oklahoma-Arkansas Telephone Company or its predecessors."

The Poteau Company became dissatisfied with the method of settlement of compensation adopted by the Bell Company, felt that the terms of the contract did not provide a fair compensation for its services, refused to pay the amounts demanded by appellee, and, some time during the year, commenced withholding from appellee commissions in excess of those fixed by the contract. This excess amounted approximately to $4,000 in December, 1927. With the merits of this contro-

versy we are not concerned. Efforts to adjust these differences having failed, appellee, in exercise of the privilege reserved in the contract, December 10, 1927, gave written notice of its intention to terminate said contract; said termination to be effective January 14, 1928. This notice of cancellation was approved by the corporation commission of Oklahoma. Subsequently, January 22, 1928, appellee established its own toll switchboard at Poteau, Okl., severed the physical connection between the two lines at Ft. Smith, Ark., and refused further to permit appellant to connect with and use appellee's exchange property at the latter place. Since the latter date, calls originating at points in appellant's system, destined for points in appellee's system, must be transferred to the Bell system at Poteau instead of at Ft. Smith, whereby appellant's lines from Poteau to Ft. Smith are rendered inoperative. May 5, 1928, appellant filed its bill to compel appellee to restore the physical connection at Ft. Smith, whereby messages originating in appellant's system might pass over its own lines from Poteau to Ft. Smith and beyond as theretofore.

The primary object of the suit is to compel the Bell Company to make a physical connection with the Poteau Company, and thereby to receive and transmit over its lines calls originating in the lines of the latter company. It must be conceded that appellant has no contract right to that relief, because the contract which conferred that privilege—all prior rights, if any, having been expressly superseded, canceled and set aside —was legally terminated in the manner therein provided. It must further be conceded that, at common law, a telephone company owes no duty to make physical connections with other telephone companies. Memphis Tel. Co. v. Cumberland T. & T. Co. (C. C. A. 6) 231 F. 835; Pacific T. & T. Co. v. Anderson (D. C.) 196 F. 699, 703; Blackledge v. Independent Tel. Co., 105 Neb. 713, 181 N. W. 709, 16 A. L. R. 343; Clay County Coop. Tel. Ass'n v. Southwestern Bell Tel. Co., 107 Kan. 169, 190 P. 747, 11 A. L. R. 1193; Home Tel. Co. v. People's T. & T. Co., 125 Tenn. 270, 141 S. W. 845, 43 L. R. A. (N. S.) 550; State ex rel. Goodwine v. Cadwallader, 172 Ind. 619, 87 N. E. 644, 89 N. E. 319.

But appellant relies largely upon the statutes of Arkansas to support its insistence upon a restoration of the Ft. Smith connection. The sections to which special reference is made are sections 7, 10, and 11 of the Act of March 31, 1885 (Acts 1885 No. 107, pp. 176, 178), and section 1 of Act No. 95, p. 346, approved February 25, 1913, amending section 7948 of Kirby's Digest of the laws of Arkansas. An understanding of section 7, supra, requires reference to section 5 which precedes it. The pertinent sections of the Arkansas Statutes follow:

"Sec. 5. In consideration of the right of way over the public property herein conceded, every telegraph or telephone corporation shall, in the case of war, insurrection or civil commotion of any kind, and for the arrest of criminals, give immediate dispatch at the usual rates of charge to any message connected therewith of any officer of the State, or of the United States."

"Sec. 7. All other messages, including those received from other telegraph or telephone companies shall be transmitted in order of their delivery, correctly and without unreasonable delay, and shall be strictly confidential: Provided, however, that arrangements may be made with the publishers of newspapers for the transmission of intelligence of general and public interest."

"Sec. 10. Every telegraph and telephone company doing business in this State must, under a penalty of five hundred dollars ($500.00) for each and every refusal so to do, transmit over its wires to localities on its lines for any individual or corporation or other telegraph or telephone company, such messages, dispatches or correspondence as may be tendered to it by, or to be transmitted to, any individual or corporation or other telegraph or telephone companies, at the price customarily asked and obtained for the transmission of similar messages, dispatches or correspondence without discrimination as to charges or promptness; the penalty herein prescribed shall be recoverable in any court through proper form of law, one-half ($\frac{1}{2}$) of which shall go to the prosecutor and one-half ($\frac{1}{2}$) to the State.

"Sec. 11. Every telephone company doing business in this State and engaged in a general telephone business shall supply all applicants for telephone connection and facilities without discrimination or partiality, provided such applicants comply or offer to comply with the reasonable regulations of the company, and no such company shall impose any condition or restriction upon any such applicant that are not imposed impartially upon all persons or companies in like situations; nor shall such company discriminate against any individual or company engaged in lawful business, by requiring as

condition for furnishing such facilities that they shall not be used in the business of the applicant, or otherwise, under penalty of one hundred dollars ($100.00) for each day such company continues such discrimination, and refuses such facilities after compliance or offer to comply with the reasonable regulations and time to furnish the same has elapsed, to be recovered by the applicant whose application is so neglected or refused."

## "Act 95.

"Section 1. That section 7948, Kirby's Digest be amended so as to read as follows:

"Section 7948. Every telephone company doing business in this State and engaged in a general telephone business shall supply all applicants for telephone connection and facilities without discrimination or partiality, within ten days after written demand therefor; provided, such applicants comply or offer to comply with the reasonable regulations of the company, and no such company shall impose any condition or restriction upon any such applicant that are not imposed impartially upon all persons or companies in like situations; nor shall such company discriminate against any individual or company engaged in lawful business, by requiring as condition for furnishing such facilities that they shall not be used in the business of the applicant, or otherwise, under a penalty of one hundred dollars, and five dollars per day for each day from the expiration of said notice until said demand is complied with or suit is instituted for penalty for failure to comply with said demand, for such discrimination, after compliance or offer to comply with the reasonable regulations of such company and the time to furnish the same has elapsed, to be recovered by the applicant whose application is so neglected or refused. And any person denied such telephone facilities shall also have the right to proceed by mandamus or other proper remedy to enforce the furnishing of same and the courts shall hear such applications either in vacation or in term time and make such temporary orders relative to the furnishing of such facilities as the facts may justify, and may enforce compliance therewith, until such orders are vacated by order of the court or the judge at chambers, or such suit is finally determined.

"Section 2. That all laws and parts of laws in conflict herewith be and the same are hereby repealed, and this Act being necessary for the public peace, health and safety shall take effect and be in force from and after its passage."

The Supreme Court of Arkansas has never construed these sections as requiring physical connection between telephone companies so far as we are advised. We are at liberty, therefore, to exercise our independent judgment. Section 8 of the Act of March 31, 1885, provides that any one who violates either provision of section 7, supra, shall be guilty of a misdemeanor. Section 7, therefore, being part of a penal statute, and in derogation of the common law, must be construed strictly, and must not be extended in application beyond that which is expressed or necessarily implied. It contains no reference to physical connections between the properties and instrumentalities of distinct telephone companies, nor is such connection necessarily implied or required by the language used. Sections 10 and 11 are quasi penal statutes. In the latter the word "connection" is used, but, manifestly, with respect to the impartial transmission of all messages and the equal enjoyment of all facilities by applicants who "comply or offer to comply with the reasonable regulations of the company." No distinction is made between individuals and companies. Evidently transactions incidental to the operations of a telephone company in the normal discharge of its business are contemplated, not the admission of outside rival companies to a proprietary use of its lines. The "telephone connection" mentioned is obviously that for which patrons customarily apply. No such can be excluded, provided they are willing to comply with reasonable regulations. The same remarks apply to section 1 of Act 95, supra. Incidentally it should be remarked that this section in terms provides an adequate remedy through mandamus.

It is true that somewhat similar statutes in some other states have received the construction for which appellant contends. Campbellsville Tel. Co. v. Lebanon, L. & L. Tel. Co., 118 Ky. 277, 80 S. W. 1114, 84 S. W. 518; State v. Skagit River T. & T. Co., 85 Wash. 43, 147 P. 885, 151 P. 1122. But we think the weight of authority and the better reasoning are to the contrary. Home Tel. Co. v. People's T. & T. Co., 125 Tenn. 270, 141 S. W. 845, 848, 43 L. R. A. (N. S.) 550; Home Tel. Co. v. Sarcoxie L. & T. Co., 236 Mo. 114, 139 S. W. 108, 118, 36 L. R. A. (N. S.) 124. In the first of these cases last cited the Supreme Court of Tennessee uses the following apt language:

"Telephone and telegraph companies are common carriers of intelligence, and must give the same service on the same terms to all who apply therefor, without partiality or unreasonable discrimination. [Citing numerous cases]. But this does not mean that a telephone company is bound to permit another telephone company to make a physical connection with its lines for the purpose of using them as its own subscribers use them. There is a wide difference between a telephone company's transmitting to any point on its line equally and indiscriminately the messages of all companies that offer them and are willing to pay the same fare for the same service, and admitting such outside companies or their patrons to the same use of its lines that its own patrons are entitled to."

The Supreme Court of Missouri, in the Sarcoxie Case, supra, considered a section of the Missouri statutes similar in import and objective to the cited Arkansas sections and said:

"This section does not require physical connection between telephone lines. It does require such company to receive all messages from other telephone or telegraph lines and transmit them, as it likewise requires it to receive all messages from individuals. This does not mean that such corporation must yield to a physical connection with its lines by a competitive company, and permit the use thereof in that way. In such case and under this statute, the telephone corporation or the telegraph corporation has no greater right than the individual. If the individual goes to the office of the telephone company and tenders payment for a message, the company must accommodate him. So, too, if a telegraph company or other telephone company goes, in the capacity of an individual or corporate entity, and demands a similar service, it must be rendered. But this does not mean that the telephone company must put up a switchboard for all such individuals or corporations desiring to do business with the telephone company. To illustrate, suppose Jones, living upon a farm 20 miles from Sarcoxie, built a private telephone line of his own to Sarcoxie, could he compel the Sarcoxie Company to attach his line to their switchboard? We think not. Then can a competitive line in the telephone business demand more than would or should be accorded to the individual? We say no. As to business which comes over another line, the Sarcoxie Company under this statute would only have to treat it as it would the general public. The general public could go to its booth or office, and upon payment of a fee fixed talk to Carthage or other points where its line reached, but each individual of the general public could not build an individual line of his own and compel physical connection with the switchboard. If the individual could not do so, another corporation could not do so."

Appellant urges that the physical connection sought to be restored was of long standing, that the public convenience is involved, and that the connection formerly existing was thereby dedicated to public use. Cases exist in support of the contention that once a telephone company makes a physical connection with another company it is bound to continue that connection indefinitely. The mere statement of this latter proposition would seem to indicate its unsoundness. An examination of these cases, however, discloses generally their inapplicability to the instant case. United States Tel. Co. v. Central Union Tel. Co. (C. C. Ohio) 171 F. 130, 144; State ex rel. Goodwine v. Cadwallader, 172 Ind. 619, 87 N. E. 644, 89 N. E. 319; Clinton-Dunn Tel. Co. v. Carolina T. & T. Co., 159 N. C. 9, 74 S. E. 636; and Campbellsville Tel. Co. v. Lebanon, etc., Tel. Co., 118 Ky. 277, 80 S. W. 1114, 84 S. W. 518, deal with cases in which the contract has fixed no period of termination. In the case at bar the contract in express terms makes ample provision for termination at the will of either party. McCardle v. Akron Tel. Co., 87 Ind. App. 59, 156 N. E. 469, 160 N. E. 48, 50, holds that the disconnection should not be made "in breach of the agreement." But the disconnection here complained of was made in accordance with the provisions of the agreement. State ex rel. Helm v. Trego County, etc., Tel. Co., 112 Kan. 701, 212 P. 902, was a mandamus proceeding in which the sanction of the public service commission was held to be required. We concur with the Supreme Court of Tennessee in its holding that such a rule, "enables one company to take the property of another for public use without compensation, and deprives the latter company of its property without due process of law." In order that a dedication to the public may be established the public convenience and interest must be involved. Under the facts before us that interest is not perceived. It is certainly no more inconvenient or expensive to transmit and receive messages over the lines of appellee than over those of appellant. Prompt and continuous service is afforded in fact and within the meaning of the pertinent statutes.

It is in evidence that appellee has permitted another telephone company to have a physical connection with its lines at Ft. Smith, and appellant urges that a telephone company cannot give such connection to one company and refuse it to another. State ex rel. v. Cadwallader, supra; United States Tel. Co. v. Central Union Tel. Co., supra, and State v. Skagit River T. & T. Co., 85 Wash. 43, 147 P. 885, 151 P. 1122, are cited in support of this contention. But we think the better view is expressed directly, or by implication, in the following decisions: Clay County, etc., Tel. Ass'n v. Southwestern Bell Tel. Co., 107 Kan. 169, 190 P. 747, 11 A. L. R. 1193; Home Tel. Co. v. People's T. & T. Co., 125 Tenn. 270, 282, 141 S. W. 845, 43 L. R. A. (N. S.) 550; Home Tel. Co. v. Sarcoxie, etc., Co., 236 Mo. 114, 139 S. W. 108, 36 L. R. A. (N. S.) 124; Pacific T. & T. Co. v. Anderson (D. C.) 196 F. 699; Atchison, etc., R. Co. v. Denver, etc., R. Co., 110 U. S. 667, 680, 685, 4 S. Ct. 185, 28 L. Ed. 291; Louisville & Nashville R. Co. v. Central Stock Yards Co., 212 U. S. 132, 29 S. Ct. 246, 53 L. Ed. 441.

In the Sarcoxie Case the Supreme Court of Missouri held that:

"A competitive telephone company cannot compel physical connection of its lines with the lines of another company. But two companies operating in different fields may by contract arrange for physical connection of their lines, and such contract is valid, and will be enforced, although the contract provides that neither party thereto shall enter into a like contract with any other company, and although, if such contract be enforced, it will deprive one of them of the right to make such physical connection with a third company engaged in long-distance service."

Finally, Congress has conferred upon the Interstate Commerce Commission full regulatory powers over interstate carriers engaged in the transmission of intelligence by wire or wireless. 49 USCA §§ 1-15. Congress having taken possession of the entire field, the power of the states to regulate the transmission of interstate messages and interstate facilities for such transmission has been suspended. Gardner v. Western Union Tel. Co. (C. C. A. 8) 231 F. 405, 409; Western Union Tel. Co. v. Boegli, 251 U. S. 315, 40 S. Ct. 167, 64 L. Ed. 281; Oregon-Washington R., etc., Co. v. State of Washington, 270 U. S. 87, 46 S. Ct. 279, 70 L. Ed. 482; Alabama, etc., Ry. Co. v. Jackson, etc., Ry. Co., 271 U. S. 244, 250, 46 S. Ct. 535, 70 L. Ed. 928.

The transmission of messages by telephone between Poteau in the state of Oklahoma and Ft. Smith, Arkansas, is a transaction in interstate commerce and falls within the jurisdiction of the Interstate Commerce Commission as provided by Congress.

"The power to make the determination whether state action will obstruct interstate commerce inheres in the United States as an incident of its power to regulate such commerce." Alabama, etc., Ry. Co. v. Jackson, etc., Ry. Co., loc. cit. page 250 of 271 U. S., 46 S. Ct. 535, 537, 70 L. Ed. 928.

We have given careful consideration to all the points raised by appellant. We find no reversible error, and the decree below is affirmed.