STATE OF MISSOURI *ex rel.* BALTIMORE & O. TELEGRAPH CO. *v.* BELL TELEPHONE CO.[1]

*(Circuit Court, E. D. Missouri. March 31, 1885.)*

RIGHT OF TELEGRAPH COMPANY TO CONNECTION WITH TELEPHONE COMPANY—PATENTS—LICENSER AND LICENSEE—MANDAMUS—PARTIES.

A., a Massachusetts corporation, and the owner of a patent on a telephone, licensed B., a Missouri corporation, to do the telephone business of St. Louis, upon condition that B. should not establish telephonic connection with any telegraph company unless especially authorized by A. A. permitted B. to establish telephonic connection with the Western Union Telegraph Company. Thereafter the Baltimore & Ohio Telegraph Company applied for a *mandamus* to compel B. to permit telephonic communication between it and the petitioner.

1 Reported by Benj. F. Rex, Esq., of the St. Louis bar.

A. was not made a party. *Held*, (1) that A. was not a necessary party; (2) that all other telegraph companies were entitled to the same privilege granted the W. U. Co. upon paying the same price; and that the petitioner was entitled to the relief asked. TREAT, J., dissenting.

Application for a *Mandamus*.

*Garland Pollard*, for petitioner.

*E. T. Allen*, for defendant.

BREWER, J., (*orally*.) In this case, I regret to say that my brother TREAT and myself do not agree fully as to the rights of the parties. It is an application on the part of the Baltimore & Ohio Telegraph Company to compel the Bell Telephone Company of Missouri—the company having the telephone business of this city—to permit telephonic communication between it and the petitioner, the Baltimore & Ohio Telegraph Company. The defendant answers that it is engaged in the telephonic business here by virtue of a license obtained from the American Bell Telephone Company, a Massachusetts corporation; that by the terms of the license under which it does business, it may not establish telephonic connection with any telegraph company, other than that permitted by the licenser,—the holder of the patent,—the Massachusetts company; and it further appears that such licenser has permitted telephonic communication with the Western Union Telegraph Company.

Now, the question is whether the court can compel this defendant, doing the telephonic business of this city, to establish communication with any other individual, or company, than that permitted by its license from the patentee. I believe fully in the sacredness of property; but I think all property stands upon an equal basis, whether that property consists of gold dollars in your pocket, real estate, or the ownership of a patent. There is no peculiar sanctity hovering over or attaching to the ownership of a patent. It is simply a property right, to be protected as such. Starting from that as a basis, while every property owner may determine for himself to what he will devote his property, yet the moment he puts that property into what I perhaps may, for lack of a better expression, define as the channels of commerce, that moment he subjects that property to the laws which control commercial transactions; just as in the warehouse cases, (*Munn* v. *State of Illinois*, decided by the supreme court of the United States, and reported in 94 U. S. 113,) in which that court held that when an individual built a warehouse, and put his property into that kind of business, he subjected the property thus placed to the laws which controlled the transactions of commerce, involved in which was the power of the public, through the legislature, to regulate rates. No man holding property was bound to build a warehouse, or bound to put his property into that particular channel, but the moment he did so, he put it where the legislature could say, "You may charge so much, and no more, for the transaction of this business." He put his property into the channels of commerce,—as mul-

titudes are doing,—into the railroad business, into the express business, and into other channels of commerce. Whenever the property is put into those channels, it is put within the power of the public, speaking through its legislature, or the power of the court enunciating general rules operative upon such transactions, to modify leases, modify licenses, control duties. So, notwithstanding this licenser has given to the licensee the right to establish a telephonic system in the city of St. Louis, with telephonic communication with only certain proscribed telegraph systems, the moment it permitted the establishment of a telephonic system here, that moment it put such telephonic system within the control of the state of Missouri, and the control of the courts, enforcing the obligations of a common carrier.

A telephonic system is simply a system for the transmission of intelligence and news. It is, perhaps, in a limited sense, and yet in a strict sense, a common carrier. It must be equal in its dealings with all. It may not say to the lawyers of St. Louis, "my license is to establish a telephonic system open to the doctors and the merchants, but shutting out you gentlemen of the bar." The moment it establishes a telephonic system here, it is bound to deal equally with all citizens in every department of business; and the moment it opened its telephonic system to one telegraph company, that moment it put itself in a position where it was bound to open its system to any other telegraph company tendering equal pay for equal service.

So, my conclusion is that, notwithstanding the terms of this license, which seem to inhibit it from dealing or giving its telephonic privileges to any other telegraph company than the Western Union, the moment it established its telephonic system here, that moment it compelled itself to respond to the demands of any telegraph company or any individual in the city tendering to it equal pay for equal privileges.

The application for *mandamus* will be sustained.

Mr. Brother TREAT differs, however, from me, and may desire to express his difference of views.

TREAT, J., (*orally.*) This is an application, it must be borne in mind, against the licensee, who has a license only in accordance with the terms thereof, and we are asked to *mandamus* that licensee to do what he has no authority to do under the terms of his license. I know of no power in a court which can change a contract between the licenser and the licensee, and give him a contract other than what he has made, either by enlargement or diminution. If this application had been made against the American Bell Telephone Company, which holds the patent,—the patentee,—it would have been a very different question, and the views suggested by my brother judge would then come up for consideration. But how is it that this licensee, who has only a restricted privilege, can by a *mandamus* of this court be ordered to do what under his contracts he cannot do? Can we make

a new contract? Now, so far as the American Bell Telephone Company is concerned, which holds the patent, it reserved for itself the right with respect to telegraphic connections; and it is alleged in this petition that it has granted that to one company. Now, if the American Bell Telephone Company was here, as between it and this party petitioner, the question presented by my brother judge would have arisen, and in that, possibly, we might not have differed at all.

This matter is not a new one in the courts. In the noted case in Ohio the court proceeded not as in this case, because there were two parties defendant or respondents, to-wit: the American Bell Telephone Company, that had all these rights, with which it had not parted; also the local company, and the charter of the state in connection therewith. There is no such case here. A like case to this was reviewed very elaborately by the Connecticut supreme court, (I think in 49 Conn.,) where precisely the views I am expressing were entertained, and they seemed to me a demonstration, and express much more clearly and forcibly than I can do in this summary manner, the true doctrine arising out of the sanctity of contracts. If this party wishes the American Bell Telephone Company to grant equal privileges to it with another telegraph company, let it pursue it,—make it do what it is asked,—but I cannot see, by any true theory of the law, why this local party is to have its rights enlarged, and its duties correspondingly enlarged, in violation of the contract under which it rests.

There may be many reasons, of course, no judicial notice of them being taken, why this restriction was made, to-wit: Here is a telephonic system in St. Louis. Each one of you present here may wish, under the terms stated, to have such telephonic connection. It is stated in the license, which is a contract, that no one of you shall use that for the purposes of taking tolls thereon. In other words, if I have a telephonic connection in my house, and I pay whatever the figure is for it, I am not to open a general telephonic system there, and let the whole neighborhood come in and use my telephone, and pay me therefor, and thus destroy the telephone company's income. It is a personal right, restricted to the use of the individual and his immediate needs. When you bring a telegraph company into operation in connection with it, what would happen? At the telegraph stations here probably there are thousands of messages coming in every day. It is receiving for these telegrams a given amount of money, and taking its tolls thereon. Further than that, instead of doing as heretofore, employing its messengers to do this work, we are asked to compel this telephone company to do that messenger work for it, as an individual would do in permitting his telephone to be used 400 to 500 times a day,—it may be for general purposes,—and the whole telegraphic business of the country poured on this telephonic system and done at a low figure. That, I suppose, was one of the reasons why this restriction was put there.

But suffice it to say, in my judgment there is no authority, for courts to compel a man to do what he has no right to do, and force him to violate his contract. He stands on his contract as he has made it, and there ends his duties, obligations, and rights, and courts cannot cause him to violate it. That is my view of the case. Parties must pursue the American Bell Telephone Company if they wish this question to be presented. It cannot arise in this way.

BREWER, J., (*orally.*) I may be pardoned for suggesting, and I do it with great deference, because as you all know, gentlemen, I share with all the members of the bar in this district in a profound admiration for my brother TREAT, but there are two things which seem to me to make against his argument very strongly. I agree with him that if this telephonic system had refused a telephonic connection with any telegraph company, that the Baltimore & Ohio Telegraph Company could not insist upon such connection, but when it has established a telephonic connection with one telegraph company, I think every other telegraph company has equal right; on the same principle that if it established a telephonic connection with one lawyer, it could not refuse telephonic connection with another lawyer; and the further practical question, that while there may be a contract between the licenser and the licensee, the licenser is not a citizen—an inhabitant—of or found within this district. Suppose this petitioner went to Massachusetts, and obtained a decree there binding the licenser; that would not bind the licensee; that would not disturb the contract, so far as the licensee is concerned. Would the court in Massachusetts have entertained a suit seeking to establish a naked legal right, and without practical benefit to any one? The licensee does not live in Massachusetts. The licenser does not live in St. Louis. Practically, of what avail would a decree be against a licenser in Massachusetts? Would it bind the licensee here? Haven't you got, in a last resort,—a last analysis for practical results,—to come right to the licenser, the holder, the proprietor of the telephonic system here?

TREAT, J., (*orally.*) You omit one consideration, (and I may say we are not going into a discussion of the question on the bench,) but it so happens that the licenser, by the very terms of his license, is the only party to make connection. He has done it, and the licensee has nothing to do with it. If you compel the licenser, in whom alone is reserved this privilege, to equalize the matter, he does it; it is immaterial whether the licensee agrees with whatever the licenser says shall be done. Hence the licensee wouldn't be a necessary party anywhere.

BREWER, J., (*orally.*) This question will be settled finally by the supreme court.

*Mr. E. T. Allen.* I will ask, in view of what has been expressed by the court, whether it wouldn't be proper that your honors should make up a certificate of a difference of opinion, in order that there may be no difficulty in regard to the amount that is involved?

TREAT, J. An affidavit will settle that.

BREWER, J. I do not think it would avail particularly, unless, as I gathered from what Justice MILLER said to me last fall, that the supreme court looks a little more kindly on a case where there is a certificate of division in respect to a motion for advancement. As far as the mere question of amount is concerned, I think that can be settled without difficulty.

TREAT, J. That has been settled, Mr. Allen, repeatedly. In looking for something else, I found repeated decisions on the point, but there is no dispute as to the practice. An affidavit as to values will be sufficient.

*Mr. Allen.* This is a very important question, and it has been, as your honors have observed, passed upon quite differently in two courts of last resort in the states of Connecticut and Ohio, and it is very desirable that it should be speedily passed upon in the supreme court.

TREAT, J. All you can do is to make an affidavit, and let it go with the papers, stating that the amount involved is over $5,000. It involved your system, and I suppose you can state that conscientiously. You can take it to the supreme court at once, and we will note there is a division of opinion, so that it can be advanced.

BREWER, J. Anything that the court can do to further the advance of the case there, it will gladly do.