CASE 30—ACTION BY CAMPBELLSVILLE TELEPHONE CO. FOR MANDAMUS TO COMPEL THE LEBANON, LOUISVILLE & LEXINGTON TELEPHONE CO. TO RECEIVE MESSAGES OVER ITS WIRES, &C.—MAY 18,

# Campbellsville Tel. Co. v. Lebanon, L. & L. Telephone Co.

118    277
d128   215

APPEAL FROM MARION CIRCUIT COURT—CHAS. PATTESON, CIRCUIT JUDGE.

FROM THE JUDGMENT REFUSING THE WRIT THE PLAINTIFF APPEALS. REVERSED.

TELEPHONES—CONNECTING LINES—CONTRACT FOR CONNECTIONS—CONSTITUTION—DURATION OF CONTRACT—CONSTRUCTION—PRACTICAL CONSTRUCTION BY PARTIES.

Held:   1.   Const. sec. 199, declares that telephone companies operating exchanges in different towns or cities shall receive and transmit each other's messages without unreasonable delay or discrimination. Two telephone companies extended their lines and connected them pursuant to a contract which required them to transmit each other's messages over the lines so extended and connected. HELD, that the duration of the contract was the corporate existence of the two companies, and it was not determinable at the will of either.

2. Defendant telephone company and plaintiff telephone company contracted to connect their lines by extending them to a point midway between two cities, in one of which defendant maintained an exchange, and in the other of which plaintiff maintained an

exchange; and it was provided that each company should have the right to send messages over the extended lines between the two cities, and, for more than eight years after the extension was made, messages originating elsewhere than in the two cities were received and passed over such lines. HELD, that in view of the situation, and the practical construction given the contract by the parties, it should be construed as calling for the transmission of messages, irrespective of whether they originated in either of the two mentioned cities.

HELM, BRUCE & HELM, ATTORNEYS FOR APPELLANT.

## SUMMARY.

We submit the following propositions, to-wit:

1. The Lebanon Telephone Company is engaged in the public service and is forbidden both by general principles of law governing such service, and also by the express provision of the Constitution of the State from making discrimination in the performance of that service.

2. The contract between appellant and appellee is still in existence and, whether it be terminable or not, the parties thereto should be prohibited from making discrimination in the rendition of the public service, certainly so long as that contract exists.

3. The contract is not in fact terminable at will, but considering the subject matter thereof and the circumstances under which it was executed, should be construed as continuing during the joint corporate existence of the two parties thereto.

4. The contract according to the long continued and contemporaneous construction of the parties, covers not only messages originating in Campbellsville destined for Lebanon, but also messages originating in other places connected by telephone with Campbellsville and destined to Lebanon; and *vice versa.*

5. Injunction is the proper remedy.

6. The preliminary injunction originally granted by the circuit court should not have been dissolved, but should have been made permanent.

7. The judgment of the circuit court dismissing the petition should be reversed and the cause remanded with instructions to proceed consistently with the foregoing propositions.

## AUTHORITIES CITED.

1. A telephone company renders a public service. Pensacola Telegraph Co. v. Western Telegraph Co., 96 U. S., 9; Hockett v. The State, 105 Ind., 257; Kentucky Constitution, section 199.

Campbellsville Tel. Co. v. Lebanon, L. & L. Tel. Co.

2. Injunction is a proper remedy to prevent discrimination and to require the performance of public service without discrimination. Bedford, Bowling Green Stone Co. v. Oman, 24 Ky. Law Rep., 2274.

3. Contemporaneous construction of contract. Thompson v. Thompson, 2 B. M., 166, 167; Clark's Run Turnpike Co. v. Commonwealth, 96 Ky., 531.

4. So long as the contract exists defendant should be enjoined from violating its provisions. Waterman on Specific Performance, Sec. 34.

5. The contract in question was not terminable at will. Smith v. Theobald, 86 Ky., 141; Collins y. Alvery, 10 Ky. Law Rep., 985; Pittsburg, &c. R. C. v. Reno, 123 Ill., 273, 914 N. E. Rep., 195; Carring v. Carr, 167 Mass., 544 (57 Am. St. Rep. 488.)

6. Authorities explained, - Irish y. Dean, 39 Wis., 562; Baldwin v. Kansas City, &c. R. Co., 111 Ala., 515 (20 Sou. R., 349); Chattanooga, &c. R. Co. v. C. N. O. & T. P. R. Co., 44 Fed. Rep., 456; Jones v. Newport News & M. V. Co., 65 Fed. Rep., 736.

HUMPHREY, BURNETT & HUMPHREY AND FAIRLEIGH, STRAUS & FAIRLEIGH, FOR APPELLEE.

The appellee Lebanon company refuses to allow one who talks from Louisville over the independent company through the Campbellsville exchange, to use its Lebanon exchange, and this suit is the result of that refusal.

We submit:

1. That there is no basis for this claim under the law, outside of the contractual relations between the parties. Sec. 199. of the Constitution providing that "telephone companies operating exchanges in different towns or cities or other public stations, shall receive and transmit each other's messages without unreasonable delay or discrimination. The General Assembly shall by general laws of uniform operation provide reasonable regulations to give full effect to this section," may be, we think, dismissed out of this case for the reason that no legislation has ever been had under this section, and the reason for this is stronger because such legislation would in no way aid the plaintiff here.

2. There is no basis for plaintiff's claim under the contract. There is not a line in the contract authorizing the Lebanon company to connect with other exchanges and to give to these other exchanges the right to use the Campbellsville exchange, nor is there a line in the contract authorizing the Campbellsville company to authorize other companies to connect with its exchange

and to use the exchange of the Lebanon company. The fact that the parties have each simply allowed the other to go farther than the written contract required, does not constitute a practical construction of a plain, unambiguous contract.

3. This contract will not be enforced because it is either void for uncertainty or terminable at will. Irish v. Dean, 39 Wis., 362; Baldwin v. Kansas City R. R., 111 Ala., 515; Chattanooga Bank v. Cincinnati Ry. Co., 44 Fed Rep., 456; Jones v. N. N. & M. V. Co., 65 Fed. Rep., 537.

4. As specific performance is not a matter of right, but of discretion, the courts have laid down, the rule that a contract will not be performed unless it is mutual and fair. Fowler v. Lewis, 3 J. J. Mar., 445; Woollums v. Horsley, 93 Ky., 585.

If a man in Louisville wants to talk to Lebanon he can talk over the Cumberland company, and through the Lebanon exchange. It is sought by a judgment in this case to give to that person the right to talk over the independent telephone company through the Campbellsville exchange to the subscribers of the Lebanon exchange. It is sought by this judgment to deprive the Lebanon company of all revenue whatsoever that it might derive from messages coming from Louisville. This proposition is so inequitable that one can hardly understand how it can be urged at all.

OPINION OF THE COURT BY JUDGE O'REAR—REVERSING.

This is an appeal from a judgment dismissing plaintiff's petition, which, after being amended, was still held to state no cause of action. From the statements of the petition it appears that appellant, the Campbellsville Telephone Company, built an exchange at Campbellsville; that appellee, the Lebanon, Louisville & Lexington Telephone Company, built an exchange at Lebanon. These two companies agreed to unite their lines at Phillipsburg, which was a point about midway between Campbellsville and Lebanon; the Campbellsville Company building the line from Campbellsville to Phillipsburg, and the Lebanon Company, by which name we will designate appellee, from Lebanon to Phillipsburg. This diagram fairly presents the geographical situation:

Campbellsville Tel. Co. v. Lebanon, L. & L. Tel. Co.

The agreement under which this connection was made and was to be operated was written, and is as follows: "It is hereby mutually agreed by and between the Lebanon, Louisville & Lexington Telephone Company (incorporated) of Lebanon, Kentucky, and the Campbellsville Telephone Company (incorporated) of Campbellsville, Kentucky as follows: The Lebanon, Louisville & Lexington Telephone Company to build, equip and maintain a first-class telephone line from Lebanon, Kentucky, to Phillipsburg, Kentucky, to meet and attach to the line of the Campbellsville Telephone Company at said place; and the Campbellsville Telephone Company to build, equip and maintain a first-class telephone line from

Campbellsville, Kentucky, via Spurlington to Phillipsburg, Kentucky, to meet and attach to the said line of the Lebanon, Louisville & Lexington Telephone Company at that place, each company to keep its part of said line in good repair at its own expense. Each company to have all the receipts for business which goes over only that part of the line belonging to it; and the receipts for all business which goes over all or any part of the line belonging to both companies shall be equally divided between them. Rates of toll to and from all points on these lines to be fixed by mutual agreement between the companies. Accounts between the companies to be settled monthly. Signed in duplicate this April 26th, 1896."

There are two points in the foregoing contract that have given rise to this controversy: (1) It failed to state for what length of time the connection and the agreement were to continue. Appellant contends that it was to endure at least during the corporate lives of the two companies. Appellee contends that it was determinable at the will of either of the parties. (2) Did the contract include messages originating elsewhere than at Lebanon or Campbellsville, or on the line between those points? Appellant affirms that it did. Appellee insists that it did not.

The trouble between the litigants came up in this way: They were each "independent" companies; that is, not using the Bell patents. Subsequently a licensee of the Bell patents, the Cumberland Telephone & Telegraph Company, acquired a controlling interest in the stock of the Lebanon Company, and built a line from Louisville to Lebanon, there connecting with the Lebanon Exchange. Later an independent line was built from Louisville to Campbellsville by the Independent Long Distance Telephone & Telegraph Company. Until then the customers of the Campbellsville Exchange used the line in connection with the Cumberland Company's line to

talk to Louisville, and customers of the Cumberland Company used the same lines in talking to persons at Campbellsville and contiguous connected points through the Campbellsville exchange. This was all done under the contract quoted. But when the independent line was built to Campbellsville from Louisville, and the Campbellsville Company effected arrangements with it for transmitting messages to and from Louisville, and when it was attempted to use the joint line of these litigants via Phillipsburg to transmit messages from Louisville to Lebanon by way of the Independent and the Campbellsville Companies, appellee refused to make the connection at the Lebanon exchange and excluded the messages. This suit was for a mandamus to compel the Lebanon Company to receive the messages over its wires, and to make the necessary connection therefor. The specific execution of the contract was thus sought by appellant.

If the contract and all rights under it are determinable at the will of either party, appellee argues that will end this suit, for, it is claimed, a court will not direct the specific execution of a contract that either party has the right to terminate the next moment. However, if the parties have not terminated the contract, as they have not in this instance, but are continuing it, and if one of them withholds a part to which the other is entitled, we perceive no good reason for refusing to compel him to bring up his end of the agreement, so long as it lasts. While the case might be rested here, we are not content to do so, but will decide the larger question, which is also presented, and which has been ably argued and fully considered; that is, whether the contract is one determinable at the will of either of the parties.

The fact that no time is fixed in the contract for which it shall endure is seized upon as affixing it to that class of contracts that run at the mutual will of the parties, and that

may therefore be terminated when either of them elects to
do so. The intention of the parties at the time of the mak-
ing of the contract, to be gathered from its terms, and the
surrounding circumstances, is the thing to be sought for and
enforced, if enforceable. That certain agreements are to con-
tinue only so long as the parties to them mutually will, is
necessarily true. Such agreements may be lawful, and when
so, and found to exist, are to be construed and enforced ac-
cording to their true intent. But whether such was or was
not the intention of the parties ought not to be settled alone
by the presence or absence of a definitely stated term. If
the intention be manifest otherwise, it is as controlling. In
Smith v. Theobald, 86 Ky., 141, 9 R., 449, 5 S. W., 394, a
contract for personal services of one as a hotel clerk, noth-
ing being said in the writing as to the time it was to run,
was construed not to be terminable at the will of the landlord.
The court declared that the question of duration intended by
the parties was one to be determined from the circumstances
of each case. And this must be so. Otherwise the intention
of the parties would be ignored, and there would be sub-
stituted instead an arbitrary rule of construction frequently
defeating the intention and doing great injustice. This con-
tract evinces a purpose to make a telephone connection be-
tween two towns in which respectively the parties owned
and operated telephone exchanges. To build the connecting
line as contracted necessarily required the outlay of a con-
siderable sum, at least as proportioned to the income from
it for a year or less. To say that the parties mutually in-
tended that either of them might quit the arrangement the
next day after the line was built, thereby practically destroy-
ing the value of the connecting line, would be preposterous.
The contract provides for monthly settlements, which of it-
self indicates a protracted duration. The nature of the busi-

Campbellsville Tel. Co. v. Lebanon, L. & L. Tel. Co.

ness was such that the more extended the service afforded its patrons, the more desirable it became to them, and the more profitable, therefore, to the owners of the lines. They must have had in mind the continuance of those conditions which they were to bring about by this extraordinary outlay of expense, instead of abandoning them. In addition, all telephone companies operating exchanges in different towns or cities in this State are required by the Constitution of this Commonwealth to receive and transmit messages between their users. What is meant by the phrase "shall receive and transmit each other's messages" is the controlling feature of the sentence. For appellee it is contended that the requirement is satisfied by one company's receiving the message as taken down and transcribed by an operator of the other company, and by forwarding or repeating it over the line as received to the person addressed. Such is the manner, doubtless, of forwarding telegraphic dispatches which pass over two or more lines. The telephone is a comparatively modern invention. Yet its utility is so universally recognized and employed as to be almost an indispensable factor among the business world's agencies, not to mention its very general employment for social purposes. It has largely superseded the telegraph, as it is a distinct improvement in many features over that means of communication. It is of scarcely less importance to business men than the post. Its practical utility, indeed its distinguishing valuable features over the telegraph, is the means it affords not merely for instantaneously transmitting a message, but for a conversation face to face, as it were, between persons remotely situated. To hear the voice of the speaker, to give the counterpart of the conversation, and at once, impress its use with a value entirely different from that of the telegraph. In a sense it takes the place of the telegraph and the post. So

that "sending a telephone message" means usually that the persons in communication be afforded the means of talking to each other. The nature and commercial use of this great modern invention have made it a *quasi* public agency. To call a thing a common carrier can not make it so. It is the nature of the business in which it is engaged that determines its character. It would not be an inapt description to say of telephone companies that they are common carriers of messages, as truly as telegraph companies are. Being in the service of the public, their control, to a reasonable and necessary extent, by the State government within whose jurisdiction they ply their business, is a proper and legitimate governmental affair. All corporations so engaged, and created in this State since 1856, take their charters subject to amendment or repeal by operation of general laws with which they may be incompatible. This provision of the Constitution (section 199) is as if written into the charter of the two companies. The section reads: "Any association or corporation, or the lessees or managers thereof, organized for the purpose, or any individual, shall have the right to construct and maintain lines of telegraph within this State, and to connect the same with other lines, and said companies shall receive and transmit each other's messages without unreasonable delay or discrimination, and all such companies are hereby declared to be common carriers and subject to legislative control. Telephone companies operating exchanges in different towns or cities, or other public stations, shall receive and transmit each other's messages without unreasonable delay or discrimination. The General Assembly shall, by general laws of uniform operation, provide reasonable regulations to give full effect to this section. Nothin herein shall be construed to interfere with the rights of cities or towns to ar-

range and control their streets and alleys, or to designate the places at which, and the manner in which, the wires of such companies shall be erected or laid within the limits or such city or town." When these two telephone companies did make such connection, they complied with a duty imposed by the laws of their existence. The section of the Constitution implies that such connections shall not only be made, and the service allowed, but that they shall be maintained and continued.

Appellee's argument at this point is that section 199 is not self-executing; that, until the Legislature has provided a way of compelling its execution, it is nugatory, so far as enforceable rights growing out of it are concerned. It is true that the Legislature has not provided a method for compelling the physical connection required by the Constitution, and has not prescribed the terms upon which one corporation may coerce the use of another's property. It is even insisted that such arrangement is so impracticable as to be impossible. The fact that these parties have made an arrangement which is not unreasonable on its face, and, so far as has been pointed out to us, is not unreasonable in its application, would seem to answer the argument of impracticability. But however that may be, these parties have done voluntarily all that was required of them by the Constitution—have made the necessary connection, and have entered into an arrangement by which each is to use, and is to pay for using the other's property. We are asked—for such is the reach of the argument—to suffer one of them to annul this arrangement, although in doing so it violates the Constitution of the State, to the direct injury of the other party to the contract. The Constitution is as binding as a law upon all citizens of the State, and all persons doing business within the State, as a statute could be. The absence of a penalty

for its unobservance can take nothing from the duty of such persons to observe the law. This connection, positively enjoined by the Constitution, having been established, must be continued. Not even the consent of both parties could legally sever it. The public are concerned in it, as much as the maintenance of a railroad depot where one has been kept for a certain number of years, or the maintenance of a turnpike-railroad crossing, although the railroad company and the turnpike company might agree to abandon the crossing.

We will conclude that this contract was not determinable at the will of either of the parties to it, but that it must continue during the corporate existence of the two companies.

Appellee's next position is that the contract limited the parties to it to the exchange of such messages as emanated at either Lebanon or Campbellsville. There is nothing in the language of the contract to exclude from its operation messages originating elsewhere, and being transmitted via the Campbellsville and Lebanon lines. The nature of the business in which the contracting parties were engaged was to handle telephone messages to and from their patrons. Of course, connecting and independent lines would have to have their part of the tolls. But that was not against the desirability of using them in connection with the local lines where tariff rates could be agreed upon. That such is the fact is not left to even reasonable conjecture, but it is admitted, as the record now stands, that for nearly eight years the parties to the contract have so interpreted its meaning, and applied it practically to their operations under it. Messages originating elsewhere were received and passed over the joint line, and through the other exchange, exactly as if they had originated in Campbellsville or Lebanon. Such contempor-

aneous practical construction by the parties to an agreement
is always accorded great weight by the courts in deter-
mining a dispute between those parties as to what the con-
tract means. Bookkeeping and accounting under this con-
tract had evidently come to be either so burdensome, or the
experience of former years had demonstrated that the tolls
each way were so nearly the same, that the parties amended
their original contract by another, covering the matter of
accountings between them. The contract provides as fol-
lows: "By mutual agreement of both parties, the contract
heretofore made between the Lebanon, Louisville & Lexington
Telephone Company (incorporated) of Lebanon, Kentucky,
and the Campbellsville Telephone Company (incorporated)
of Campbellsville, Kentucky, on the 28th of April, 1896, is
hereby changed in the following particulars, to wit: The
Lebanon, Louisville & Lexington Telephone Company is to
keep and retain as its own all the receipts that it collects,
at its offices at Lebanon and Calvary for all messages that
go over all or any part of said line from Lebanon to Camp-
bellsville, and the Campbellsville Telephone Company is to
keep and retain as its own all the receipts that it collects
at its offices in Campbellsville and Spurlington for all mes-
sages that go over all or any part of said line from Camp-
bellsville to Lebanon; and the division of profits between
said companies are to be made in this way in lieu of monthly
settlements and divisions of receipts as set out in the original
contract; thus dispensing with bookkeeping and monthly
settlements. But each company is to account for and pay
to the other company all moneys that it may pay out for
the other company. This March 5th, 1897." These two con-
tracts were construed by the parties, in their practical ap-
plication, to mean that if a message originated in Louisville

and sent via Lebanon, destined for Campbellsville, and transmitted through the Lebanon exchange and over the joint wire and through the Campbellsville exchange, the tolls were altogether the Lebanon company's and the company's who had transmitted it from Louisville to Lebanon. But if a message originated at Campbellsville, or other point coming through the Campbellsville exchange, destined for Louisville, via the Lebanon exchange and its connecting Louisville company, then the Lebanon company got none of its tolls; but, to the extent the Lebanon company was compelled to pay the Louisville line toll upon the message, Campbellsville reimbursed Lebanon for it. And so on. The converse of the proposition must be equally true. The terms of these contracts are matters subject to change by mutual agreement of the parties. But until changed they are enforceable.

We therefore conclude that when a message originating in Louisville, or on the line of the Independent Long Distance Telephone & Telegraph Company, destined for Lebanon or vicinity, connected with the Lebanon exchange, and to pass via the Campbellsville exchange, it was the right of appellant to have the message passed over the joint wires of the two contracting companies, and through the Lebanon exchange, under the terms of the contracts. The mandatory injunction prayed for should have been granted.

Judgment reversed and remanded for proceedings consistent herewith.

Chief Justice Burnam and Judges Settle and Paynter dissent.

Extension of opinion by Judge O'Rear, January 18, 1905:

Lest the expression in the original opinion that the duration of the contract between appellant and appellee "must

continue during the corporate existence of the two companies," should be misleading, we extend the opinion so as to express more clearly what was meant. The contract should endure so long as the parties to it and their successors continue to maintain an exchange or public station at the cities of Lebanon and Campbellsville, or at the intermediate point of Phillipsburg. Should either of the parties elect to withdraw from the city of Lebanon or Campbellsville and quit doing telephone business or operating a public station or exchange at either of those points, then the contract would be terminable by that fact, although the company so withdrawing might continue its corporate existence and do a telephone business elsewhere. But so long as it exercises its franchise in maintaining an exchange or public station as a telephone corporation in the cities or at the station now served in that community, they must observe the constitutional requirement and maintain the connection and transmit messages between their respective lines.