[No. 12397. *En Banc.* April 10, 1915.]

The State of Washington, *on the Relation of the Public Service Commission, Appellant,* v. Skagit River Telephone & Telegraph Company *et al., Respondents.*[1]

Eminent Domain—Compensation—Regulation by Public Service Commission. While the public service commission has plenary powers to regulate all public utilities within the state, it has no power, under a pretended public use or a pretended exercise of the police power of the state, to so regulate as to amount to an appropriation of property, without just compensation being first made and paid to the owner.

Telegraphs and Telephones—Regulation—Public Service Commission. In a mandamus proceeding by the public service commission to compel certain telephone companies to comply with an order requiring them to make physical connection so as to transmit one another's messages, the commission cannot urge that one of the companies, which had been dismissed as a party to the proceedings before it, has no right to be heard in the mandamus proceeding because of its failure to cause the proceedings before the public service commission to be reviewed, as required by 3 Rem. & Bal. Code, §§ 8626-86 and 8626-99, which declares conclusive the orders of such commission unless set aside or annulled in proceedings to review the orders; since it had been dismissed and its rights were not affected, and since in such proceedings the commission was acting judicially, and its orders, if not erroneous merely but made without authority and void, would be subject to collateral attack.

Telegraphs and Telephones—Public Service Commission—Regularity of Action—Presumptions. Where it is sought by mandamus to compel compliance with the orders of the public service commission requiring physical connection of two telephone systems and the

[1]Reported in 147 Pac. 885.

transmission of messages of one over the lines of the other, the presumption of regularity and validity attaches to the order, and the burden is upon the defendants to show the unreasonableness and lack of necessity of the commission's order; and hence it was proper to permit defendants to introduce evidence tending to show that the order was contrary to law, and that the effect of the order would be to deprive the defendants of their property in violation of the fourteenth amendment to the Federal constitution.

TELEGRAPHS AND TELEPHONES — REGULATION — CONNECTING LINES. Where one telephone company has by contract opened its lines to physical connection and services for another telephone company upon certain terms, its act is equivalent to a declaration of a purpose to waive its primary right of independence, and it can be required, as a state regulation within the police power, to accord the same facilities, conveniences and uses to other telephone companies upon equal terms.

TELEGRAPHS AND TELEPHONES — REGULATION BY PUBLIC SERVICE COMMISSION — ORDERING CONNECTION — APPROPRIATION OF PROPERTY WITHOUT COMPENSATION. An order of the public service commission for the physical connection of two telephone companies and the transmission of messages of each over the lines of the other, without any provision being made for compensation, either as tolls for temporary service, or for the cost of the physical connection, or for the permanent use of the lines and facilities of either of the said companies, is void as an attempted taking of private property without due compensation, in violation of art. 1, § 16, of the state constitution and of the fourteenth amendment of the constitution of the United States.

SAME. While the public service commission has power to order such a physical connection, it must be without discrimination, with provisions for the payment of the cost, and reasonable regulations.

Appeal from a judgment of the superior court for Thurston county, Mitchell, J., entered August 15, 1914, dismissing an action to compel the enforcement of an order of the public service commission requiring physical connection between the lines of telephone companies, after a trial before the court. Affirmed.

*The Attorney General* and *Scott Z. Henderson, Assistant,* for appellant.

*Hughes, McMicken, Dovell & Ramsey* and *Otto B. Rupp (Pillsbury, Madison & Sutro,* of counsel), for respondents.

HOLCOMB, J.—Upon a complaint by the commercial club of Sedro-Woolley, made before the public service commission on May 1, 1913, proceedings were had, resulting in an order by the public service commission requiring that a connection be made between wires of the Skagit River Telephone & Telegraph Company, hereinafter called the Skagit company, and the Puget Sound Independent Telephone Company, hereinafter called the Independent company, at the eastern limits of Sedro-Woolley. The Skagit company is a Washington corporation, owning and operating a telephone line extending easterly from the easterly limits of Sedro-Woolley, through the valley of the Skagit river, and through the towns of Lyman, Hamilton, Concrete, and Rockport. This company maintains no central station at Sedro-Woolley, but at the city limits its lines are connected with those of the Pacific Telephone & Telegraph Company, hereinafter called the Pacific company. This connection exists by virtue of a contract between these two companies. The Pacific company is a California corporation, owning and operating a telephone system extending generally throughout the Pacific Coast states. Its lines extend into Skagit county and as far east as Sedro-Woolley, at which point it maintains a central station, and connects there, as stated, with the lines of the Skagit company at the easterly limits of the city. The Independent company is a Washington corporation, owning and operating a rather extensive telephone system in the counties of King, Snohomish, and Whatcom, and through the county of Skagit as far east as Sedro-Woolley, at which point it maintains a central station. Its lines are not connected with those of the Skagit company at Sedro-Woolley or elsewhere.

As a result of the connection between the lines of the Skagit company and the Pacific company, all persons and localities served by one company can freely communicate by telephone with persons and localities served by the other. The lines of the Skagit company extend east from Sedro-

Woolley. The lines of the Independent company extend west from Sedro-Woolley, and these lines are not now, and never have been, connected. Each reaches localities not reached by the other. In the territory west of the easterly limits of Sedro-Woolley, through which the lines of the Pacific company and the Independent company radiate, all localities reached by the Independent company are also reached by the Pacific company, but there are numerous individual subscribers of the Independent company who do not have the Pacific company's telephone. Likewise, there are numerous subscribers to the Pacific company who do not have the Independent company's telephone. Only such persons in the territory west of Sedro-Woolley as have Pacific telephones are able to communicate with persons east of Sedro-Woolley on the lines of the Skagit company. At the hearing before the public service commission, the three telephone companies participated. The public service commission made and adopted findings, the most important of which appears to be finding No. 19, as follows:

"That by means of such physical connection between the Pacific Telephone & Telegraph Company's lines and those of the Skagit River Telephone and Telegraph Company, *there now exists a continuous line of communication between the localities served by the Skagit system, and all localities within telephonic distance thereof served by the Pacific system, including all of the localities reached by the lines of the Independent system,* [italics ours] but no continuous line of communication exists between the lines of the Puget Sound Independent Telephone Company and the lines of the Skagit River Telephone and Telegraph Company. That a necessity exists for a continuous line of communication between the localities served by the Skagit River Telephone Company and the localities served by the Puget Sound Independent Telephone Company, and for a physical connection between the lines of said Skagit River Telephone and Telegraph Company and said Puget Sound Independent Telephone Company at or near the eastern limits of the city of Sedro-Woolley in Skagit county, Washington. From a consideration of all the evidence, the commission finds and concludes

that the lines of the Skagit River Telephone and Telegraph Company and the Puget Sound Independent Telephone Company can, by the construction and maintenance of suitable connection at or near the eastern limits of the city of Sedro-Woolley, be made to form a continuous line of communication between localities that are not reached by the lines of either company alone; that such connection for the transmittal of conversations and transfer of messages can reasonably be made, and efficient service obtained, and a necessity exists therefor."

Based upon the foregoing findings, the commission made the following order:

"Wherefore, it is ordered, that the Puget Sound Independent Telephone Company and the Skagit River Telephone and Telegraph Company be, and such companies are hereby ordered and directed to make physical connection between the telephone lines of said companies at or near the eastern limits of the city of Sedro-Woolley, Washington, so as to form a line of continuous communication for the transmittal of conversations and the transfer of messages between the localities served by the Puget Sound Independent Telephone Company and the localities served by the Skagit River Telephone and Telegraph Company, and that such physical connection be made within thirty days after the service upon said telephone companies of a certified copy of this order, and said companies are ordered and directed to thereafter transmit conversations and transfer messages between said localities, or show cause, if any there be, why such connection cannot reasonably be made within said time. It is further ordered, that the complaint in this case, in so far as the same relates to or affects the defendant, Pacific Telephone and Telegraph Company, be, and such complaint hereby is dismissed."

It will be noticed that, although the Pacific company was a party to the proceeding before the commission, the order required nothing of it, and as to it the complaint was dismissed. No action to review the findings and order of the commission was prosecuted by any of the telephone companies involved, as provided by § 86 of the public service

.commission law (Laws of 1911, ch. 117, pp. 538, 596; 3 Rem. & Bal. Code, § 8626-86). An agreement between the Pacific company and the Skagit company was exhibited in evidence, under which it was shown the Pacific company constructed and operates a pair of telephone wires from Mount Vernon easterly to Sedro-Woolley, and at the easterly limits of Sedro-Woolley these lines connect with a pair of telephone wires constructed and operated by the Skagit company easterly from Sedro-Woolley to Concrete.

After the said order was made by the commission, the Independent company indicated, and still indicates, its willingness to comply with the order, but the Skagit company failed and refused to comply with the order, and the Pacific company commenced a suit in equity in the Federal court for the western district of Washington, for the purpose of having the enforcement of said order permanently enjoined. The Skagit company, the Independent company, and the members of the commission were made defendants in that action. This suit was one that fell within the provisions of § 266 of the Federal Judicial Code as amended (U. S. Stats. at Large, 62d Cong. vol. 37, p. 1013), by the terms of which if, before the final hearing of the application for preliminary, provisional, and perpetual injunctive relief, a suit shall have been brought in the courts of the state having jurisdiction thereof under the laws of such state to enforce such statute or order, accompanied by a stay in such state court of proceedings under such statute or order pending the determination of such suit by such state court, all proceedings in any court of the United States to restrain the execution of such statute or order shall be stayed pending the final determination of such suit in the courts of the state. Therefore, the commission elected to have the validity of its order determined in the state courts. Accordingly, this mandamus action was commenced in the superior court of Thurston county, to compel the observance of the order the enforcement of which the Pacific company sought to enjoin in the Federal

court. The pendency of the mandamus action in the state court being made to appear in the Federal court, the controversy was there stayed until the determination by the state courts.

Upon the controversy being thus waged in the state courts, the three telephone companies filed separate answers to the commission's petition. The answer of the Pacific company asserts, in effect, that the order of the commission is void and unenforceable, (1) because not within the power conferred on the commission by the public service commission law; (2) because violative of the obligation of the connective agreement between the Pacific company and the Skagit company; (3) because, if enforced, the order would operate to deprive the Pacific company of its property without due process of law, in contravention of the state and Federal constitutions. It also, by its answer, claimed that the order, if enforced, would constitute an unlawful interference with interstate commerce. This objection, however, was not urged at the trial below. The Skagit company, by its answer, asserts that it refused to comply with the order of the commission because it deems the exclusive agreement between itself and the Pacific company a valid and subsisting contract binding upon both parties thereto, and the order of the commission, in conflict therewith, null and void. The Independent company, by its answer, admits the material allegations of the commission's petition for the writ, and states its willingness to comply with the order unless restrained from so doing or prevented by the refusal of the Skagit company. The reply of the commission puts in issue all the affirmative matters in the answer of the Pacific company. After a trial before the court below, the writ of mandate prayed for was refused and the case dismissed. From such judgment of dismissal, this appeal is prosecuted.

The validity of the order made by the public service commission is questioned on two general grounds, (1) that it is

beyond the statutory power conferred on the commission; (2) that it is in excess of any power that could constitutionally be conferred upon the commission. The trial court apparently based his decision upon the first ground alone.

The proceeding before the commission was based on § 73 of the public service commission law, being chapter 117, Laws of 1911, p. 585. That section is as follows:

"Whenever the commission shall find that any two or more telephone companies, whose lines form a continuous line of communication, or could be made to do so by the construction and maintenance of suitable connections for the transfer of messages or conversations at common points between different localities which are not reached by the line of either company alone, and that such connections or facilities for the transfer of messages or conversations at common points can reasonably be made, an efficient service obtained and that a necessity exists therefor, . . . the commission may, by its order, require such connection to be made, and that conversations be transmitted and messages transferred, and prescribe through lines and joint rates and charges to be made, and to be used, observed and in force in the future, and fix the same by order to be served upon the company or companies affected." 3 Rem. & Bal. Code, § 8626-73.

That the public service commission has plenary powers to regulate all public utilities within the state has been thoroughly established and determined in this state and requires no citation of authority. The power to regulate, however, is widely different from the power to appropriate or to take. While the commission is a mandatory agency of the state, neither it nor the legislature which gave it its power has power to regulate in violation of any of the provisions of the fundamental law of the state or nation, and neither the legislature nor its agent, the commission, has power to appropriate property under a pretended public use or a pretended exercise of the police power of the state without just compensation being first made and paid to the owner thereof. U. S. Const., 14th Amendment; State Const., art. 1, § 16.

Under the provision of our constitution, art. 1, § 16,

"Whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be really public shall be a judicial question, and determined as such, without regard to any legislative assertion that the use is public."

It must be determined, therefore, whether the requirement of the public service commission of the connection of the lines of these two telephone companies is a valid regulation, or whether it is a taking or damaging of the property of one of the companies without due process of law, or without compensation being first made and paid to the owner.

I.   The appellant first contends that the Pacific company has no right to be heard now, because it did not cause the proceedings before the public service commission to be reviewed, as provided by §§ 86 and 99 of said chapter 117, Laws of 1911, pp. 596, 608 (3 Rem. & Bal. Code, §§ 8626-86, 8626-99). One answer to this is that the Pacific company was dismissed by the public service commission in the proceeding before it, and the order of the public service commission did not pretend to, and in fact pretended not to, affect any right or property of the Pacific company. Another answer is that, although said § 99 (Id., § 8626-99) provides that, in all actions between private parties and public service companies involving any order of the commission, or for the enforcement of the orders or rules issued by the commission, the said orders and rules shall be conclusive unless set aside or annulled in a review as in that act provided, nevertheless the commission in said proceedings was acting quasi judicially, and even a court of record which enters a void judgment does not bind the parties thereto, or any one else, and such void judgment may be attacked collaterally.

The case relied upon by appellant as to that point, *State ex rel. Railroad Commission v. Oregon R. & Nav. Co.*, 68 Wash. 160, 123 Pac. 3, only went to the point that the objection, that the complaint does not state sufficient facts to

constitute a cause of action, so as to confer upon the commission jurisdiction of the subject-matter, cannot be raised for the first time in another action brought to enforce an order of the commission, when no such objection was made in the proceeding before the commission and no appeal or review upon such objection was taken as provided by law. It did not go to the point of the lack of power to render any order whatever. It was only intended to be held in the case cited, agreeably to settled and just rules of procedure, that one cannot actively cause or silently permit a court or tribunal to commit an error, or proceed irregularly, in a matter wherein it is assumed that it has jurisdiction and power to proceed, without calling such error to its attention and taking proper steps to review such error or correct such irregularity in the first instance in such court or tribunal; and if not corrected by it, then to review same in the superior court or tribunal, if such right of review exists. It was never intended to hold, in the case cited or in any case called to our attention, that a judgment or order of any court or tribunal of inferior or intermediate powers, where there is an entire lack of power to support such judgment or order, is final and conclusive upon any one. It may be true, also, that the respondent, having failed to obtain a review of the commission's proceedings by the method provided by law, is foreclosed from questioning the validity of and conclusiveness of such finding and order in any other proceedings *except against a cause which renders the order void.*

"If the order is void, even though there was a failure to seek relief against it in the regular way, the party affected is not deprived of the right to defend, when such order is attempted to be enforced in a court of equity." *Southern Indiana R. Co. v. Railroad Commission of Indiana,* 172 Ind. 113, 87 N. E. 966.

In other words, if the order of the commission in controversy was merely erroneous, or an error of judgment only, not having been directly attacked and reviewed as provided

by §§ 86 and 99 (Id., §§ 8626-86, 8626-99) of the act, it is final and conclusive on all parties. If, however, it rested upon no power or authority, it is void and a nullity.

II. It has been affirmatively established that the state has power, in the exercise of its police power, to regulate common carriers for the benefit of the general public, and to require physical connection of different railroads within the state for the convenient interchange of shipments of freight by transferring cars from one to another, and the state can, by clear express authority, delegate that power to a regulative commission. *Wisconsin, M. & P. R. Co. v. Jacobson,* 179 U. S. 287; *Jacobson v. Wisconsin M. & P. R. Co.,* 71 Minn. 519, 74 N. W. 893, 70 Am. St. 358, 40 L. R. A. 389; *Grand Trunk R. Co. of Canada v. Michigan R. R. Commission,* 231 U. S. 457.

In the first case above cited, it is said:

"If power were granted by the legislature, and it amounted in the particular case simply to a fair, reasonable, and appropriate regulation of the business of the corporation, when considered with regard to the interests both of the company and of the public, the legislation would be valid, and would furnish, therefore, ample authority for the courts to enforce it."

It will be observed from the above quotation that a test of the authority of the regulating body is that "in the particular case it amounted simply to a fair, reasonable, and appropriate regulation of business." In the present case, the statute conferring the power used the term "and that a necessity exists therefor." Every presumption is in favor of the commission's action where it has such regulatory powers in general, and the burden is upon the complaining party to show that its action was contrary to law. *Jacobson v. Wisconsin, M. & P. R. Co.,* supra; *State ex rel. Great Northern R. Co. v. Public Service Commission,* 76 Wash. 625, 137 Pac. 132. Consequently, it is earnestly insisted by the respondent in this case that it was not only its right, but its

duty, to introduce evidence in the trial of this case below to show the unreasonableness and the lack of necessity of the commission's order.    The lower court received evidence in behalf of respondent Pacific company.

"Where the taking is under an administrative regulation the defendant must not be denied the right to show that as matter of law the order was so arbitrary, unjust or unreasonable as to amount to a deprivation of property in violation of the Fourteenth Amendment." *State of Washington ex rel. Oregon R. & Nav. Co. v. Fairchild*, 224 U. S. 510, 524.

As to this situation, appellant's position is that respondent was never denied the right to show that condition, it having been a party to, and participating in, the proceedings before the commission.    To this it must be said, first, that ostensibly no order was made by the commission against respondent the Pacific company; and second, the commission has not the power to exercise the right of eminent domain and take or appropriate private property without compensation.    It was proper, therefore, to introduce evidence, under the decision of the United States supreme court above cited, for the purpose of showing that the effect of the commission's order would be to deprive the respondent of its property in violation of the fourteenth amendment, and to show that there was no necessity for the order, and that it was arbitrary and unreasonable.    Whether the evidence introduced so shows is another question.

The commission found, finding No. 16:

"That a suitable connection between the lines of the Puget Sound Independent Telephone Company and the lines of the Skagit River Telephone Company, for the transfer of messages and conversations can be made at or near the east limits of the city of Sedro-Woolley at a cost of about fifty dollars, without connecting with or using the switchboard of the Pacific Telephone and Telegraph Company, or any other telephone paraphernalia or other property of the Pacific company; that said connection can reasonably be made and an efficient service obtained thereby."

Aside from the apparent obligation of the connecting and operating contract heretofore mentioned between it and the Pacific company, the Skagit company appears to have no objection to the connection ordered. The Pacific company, however, contends that, because of the connection of its telephone wires at or near the east limits of Sedro-Woolley with the lines of the Skagit company, if the Independent company is permitted to connect its telephone wires with those of the Skagit company at or near the east limits of Sedro-Woolley, the calls made from the Independent company's lines will "ring in" on the lines of the Pacific company, and will interrupt its service, and will, for as long as messages or conversations from the Independent company's lines are going over the lines of the Skagit company, deprive the Pacific company of the use of its connecting lines between Sedro-Woolley and Mount Vernon to the west and to connecting points such as Seattle, and that the efficiency of its service will be greatly impaired. The engineer for the commission himself admitted that "the objection to the connection ordered was that it would cause a loss of supervision and a lack of transmission efficiency."

The lower court was of the opinion that the commission, having, by its 19th finding, found that, by reason of connection between the Pacific company and the Skagit company, one through line of communication exists between points east of Sedro-Woolley and points west of Sedro-Woolley, could not order a connection between the Skagit company and the Independent company the effect of which would be to furnish merely an additional through line of communication, and based his holding largely upon the remarks of the opinion writer and of Judge Chadwick in the case of *Day v. Tacoma R. & Power Co.*, 80 Wash. 161, 141 Pac. 347. It will be observed that, in so far as the transmission of telephonic traffic over the Skagit company's line between Sedro-Woolley and Concrete is concerned, there will be no dual system, but on the contrary a single system of carriage. The appellant

cites the recent case of *Pacific Tel. & Tel. Co. v. Wright-Dickinson Hotel Co.*, 214 Fed. 666, where a direct connection between two different companies having private exchanges in a hotel was ordered by the railroad commission of Oregon, and was sustained by the United States District Court of Oregon, Gilbert, Circuit Judge, and Wolverton, and Bean, District Judges, sitting, wherein Wolverton, District Judge, writing the opinion, used this language:

"It is not a new or different use or burden that is required by the service, nor does another or different person, corporation, or entity occupy or utilize the lines or system of the plaintiff company. It is still left in the full and unrestricted occupancy and operation of its own lines or system, except as it is required to observe and comply with a regulation that the commission has deemed proper to impose upon it, namely, that it transmit also the messages coming from the hotels which originate on the wires of the Home company. This is not a taking of its property in any sense. It is but a reasonable regulation which is properly referable to the police power of the state."

The constitution of Washington, art. 12, § 19, provides as follows:

"Any association or corporation, or the lessees or managers thereof, organized for the purpose, or any individual, shall have the right to construct and maintain lines of telegraph and telephone within this state, and said companies shall receive and transmit each other's messages without delay or discrimination, and all of such companies are hereby declared to be common carriers and subject to legislative control. . . . The right of eminent domain is hereby extended to all telegraph and telephone companies. The legislature shall, by general law of uniform operation, provide reasonable regulations to give effect to this section."

Under a similar constitutional provision of the state of Montana, the Billings Mutual Telephone Company, operating a local telephone system in the city of Billings and having no long distance lines, brought an action against the Rocky Mountain Telephone Company, owning and operating long

distance lines from Billings to other localities in the state and elsewhere, to appropriate and condemn and have the damages ascertained and paid under the statutes of that state, the right to connect with and use the lines of the Rocky Mountain Telephone Company. The case was brought in the United States District Court for Montana. The court in passing thereon, per Hunt, J., says:

"Where two companies owning different lines of telephones in Montana cannot agree upon the compensation for the privilege of connection and use, the law of Montana obliges the one to submit to connection with the other, and (upon payment of damages to be assessed) to accept a patronage, and to submit to a necessary use that it might not wish to accept or allow, and probably could not be compelled to accept or allow, were it not for the provisions of the constitution and laws of the state. . . . No questions of complicated traffic arrangements enter into consideration of the matter as it now stands before the court. Difficulties of such a nature may arise hereafter, but they can be surmounted when the principle is recognized that the spirit of the constitution and the letter of the laws of the state, in which defendant operates its lines, compel it, under its primal duty to the public, to yield to the right of plaintiff company to connect its line with defendant's and to enjoy the use thereof in a reasonable and effective way, provided, of course, damages are paid as required by law." *Billings Mutual Tel. Co. v. Rocky Mountain Bell Tel. Co.*, 155 Fed. 207; citing *Atlantic Coast Line R. Co. v. North Carolina Corporation Commission*, 206 U. S. 1; *Campbellsville Tel. Co. v. Lebanon, L. & L. Tel. Co.*, 118 Ky. 277, 80 S. W. 1114, 84 S. W. 518.

The court continuing says:

"From these views it follows that plaintiff is within its rights when it invokes the power of eminent domain for proposed long-distance telephone connections, which constitute a clearly defined public use."

In the instant case, no power of eminent domain is invoked, and no compensation or damages were determined and allowed to respondents. There is, of course, a marked differ-

ence between a requirement of connection and free use of the telephone lines of one telephone company by another, and the requirement of same and the payment of compensation and damages therefor under the right of eminent domain. In the Kentucky case of *Campbellsville Tel. Co. v. Lebanon, L. & L. Tel. Co.*, 118 Ky. 277, 80 S. W. 1114, 84 S. W. 518, the two companies had entered into an agreement for direct connection and transmission of each other's telephonic traffic, without fixing any period of time for the duration thereof. One of the companies desired to end it, but the supreme court, although holding that, under a similar constitutional provision in the Kentucky constitution of 1891, it probably could not be construed to mean that a direct physical connection could be enforced by the state as a regulation, held that, nevertheless, a contract not limited as to time between the two companies for physical connection, in view of the manifest public policy of the same, should be construed to mean a contract for the life of the corporate existence of the companies respectively.

In Oklahoma, where physical connections had been ordered by the corporation commission of that state between two telephone companies reaching the same common point, and for a division of the long distance tolls between them, and for compensation for the cost of connection by the connecting company, it was held in two cases not cited by either of the parties in this case, that, under the constitution of Oklahoma which is similar to ours but contains a further provision that direct physical connections might be ordered, such regulation was a reasonable and constitutional regulation of telephone traffic, and the orders of the commission were upheld in each case with some modifications in the first one. *Pioneer Tel. & Tel. Co. v. Grant County Rural Tel. Co.* (Okl.), 119 Pac. 968; *Pioneer Tel. & Tel. Co. v. State*, 38 Okl. 554, 134 Pac. 398.

It is well understood, of course, that, under the settled law of the country, telephone companies are common carriers

and public service corporations, and as such, when they procure their charter or license to engage in such business, they engage in a public service and do so with full knowledge that they thereby become agencies of the state, subject to its control and regulation and under the exercise of its police power, for the comfort and convenience of the state (31 Cyc. 902), subject to the condition that their property shall not be taken except by due process of law. When a fair and just compensation is afforded for such conveniences, facilities, and service, the constitutional requirement is satisfied. *Pioneer Tel. & Tel. Co. v. Grant County Rural Tel. Co., supra.*

It is true that, in the present case, no provision whatever was made by the commission for compensation to either the Skagit company or the Pacific company, either as tolls for the temporary service of either company, or for the cost of the physical connection, or for the permanent use of the lines and facilities of either of the said companies.

The situation presented here is somewhat similar, excepting the element of danger of course, to a requirement by the state that one railroad company should allow physical connections with its line by one or more other railroad companies at some common point, and permit either or both said connecting companies to run trains at will over the property and tracks of the first company. It is somewhat different from a mere system of delivery by one company of messages to be transmitted or cars to be hauled to destination by one company for others. In the case of telephonic traffic, however, *transmission "without delay" means continuous transmission,* and would seem, therefore, to require direct physical connection to provide for transmission without delay. It has been well settled in this country since the earliest days of telephonic service that, as was said by Brewer, Circuit Justice, in *State of Missouri ex rel. Baltimore & O. Tel. Co. v. Bell Tel. Co.,* 23 Fed. 539:

"A telephonic system is simply a system for the transmission of intelligence and news. It is, perhaps, in a limited

sense, and yet in a strict sense, a common carrier. It must be equal in its dealings with all. It may not say to the lawyers of St. Louis, 'my license is to establish a telephonic system open to the doctors and the merchants but shutting out you gentlemen of the bar.' The moment it establishes a telephonic system here, it is bound to deal equally with all citizens in every department of business; and the moment it opened its telephonic system to one telegraph company, that moment it put itself in a position where it was bound to open its system to any other telegraph company, tendering equal pay for equal service."

It was said also in *Delaware & A. Tel. & Tel. Co. v. State of Delaware ex rel. Postal Telegraph-Cable Co.*, 50 Fed. 677: "They cannot discriminate between individuals or classes which they undertake to serve." In *State ex rel. Postal Telegraph-Cable Co. v. Delaware & A. Tel. & Tel. Co.*, 47 Fed. 633, it was held:

"Respondent [a telephone company] was a common carrier, offering to the public the use of its telephonic system for the rapid conveyance of oral messages, and as such, was subject to the duty of serving all persons alike, impartially, and without unreasonable discrimination; and that the right to equal facilities for the use of such public system extended to telegraph companies as well as to individuals."

III.    While the Skagit company seems in this controversy in a measure passive and the Pacific company actively opposed to the enforcement of the commission's order, the Skagit company is in reality the center of attack. It is to render the localities served by it accessible also to the users of the Independent company, the same as they are accessible to the users of the Pacific company, that the proceedings were had and the order made. The contract between the Pacific company and the Skagit company has been determined void as in violation of the act of Congress of July 3, 1890, entitled: "An act to protect trade and commerce against unlawful restraints and monopolies," in a case decided by the United States District Court for the District of Oregon and entered therein on March 26, 1914, wherein, by consent of

the Pacific company, which was one of the parties therein in a suit by the United States as complainant against it and many other telephone companies, it was adjudicated:

"Twelfth.   That the Pacific Company has made many contracts with other telephone companies doing business in and between Washington, Oregon and Idaho, whereby said other companies agree to give to said Pacific Company exclusively all long distance business originating on their lines. Wherefore, the Pacific Company, its officers, directors, agents, and employees, are perpetually restrained and enjoined from enforcing or attempting to enforce or accepting any benefits under the exclusive provisions in said contracts and from entering into any like covenants in the future."

The lines of the Pacific company and of the Skagit company are, however, physically connected at Sedro-Woolley by virtue of said contract as previously made and with mutual benefits, but the exclusive privileges of each of said companies over the lines of the other are ended.   The users of the Independent company's lines are not directly connected with the localities and users of the Skagit company's lines, and there are, therefore, localities on the Skagit company's lines "not reached by the lines of the Independent company alone."   But by connecting the lines of the Independent company with those of the Skagit company at or near the easterly limits of Sedro-Woolley, they could be reached by the users of the Independent company.   This the statute, if it is valid, expressly authorizes.

The respondents rely very largely upon the decision by the supreme court of California in *Pacific Tel. & Tel. Co. v. Eshleman,* 166 Cal. 640, 137 Pac. 1119.   The court in that case ignored the express and mandatory provision of the constitution of the state of California, and rested its decision almost, if not entirely, upon the provisions particularly of the fourteenth amendment to the Federal constitution.   In the case of *Pacific Tel. & Tel. Co. v. Wright-Dickinson Hotel Co., supra,* the three judges sitting in the district court of Oregon declined to follow that case, without commenting on

it further than to say that they were "unable to give assent thereto." From a careful review of most of the decisions, we are satisfied that the decision in the *Eshleman* case is not supported even by the decisions in the Federal jurisdictions, and is against the weight of authority. It is unfortunate further in that, in having decided against the state and in favor of the public service corporation, that decision prevents a review of the Federal questions involved, by the Federal courts. We are satisfied from a careful examination of the authorities that the following are the correct conclusions as to the law:

(1)   If without such constitutional and statutory provisions as we have here, while impartial conveyance or transmission of messages by these several companies could be, without physical connection of the lines of the several companies, legally required as a regulation, and physical connection of the lines of the several telephone companies might not be legally required as a mere regulation under the police power, yet "if such connection is voluntarily made by contract, as is here alleged to be the case . . . the act of the parties in making such connection is equivalent to a declaration of a purpose to waive the primary right of independence and imposes upon the property such a public status that it may not be disregarded." *State ex rel. v. Cadwallader*, 172 Ind. 619, 87 N. E. 644, 89 N. E. 319; citing *Mahan v. Michigan Tel. Co.*, 132 Mich. 242, 93 N. W. 629; *State of Missouri ex rel. Baltimore & O. R. Co. v. Bell Tel. Co.*, 23 Fed. 539; 37 Cyc. 1656-1658.

(2)   That when one telephone company has opened its lines to physical connection and services for another telephone company upon certain terms, it can be required, as a state regulation within the police power, to accord the same facilities, conveniences, and uses to another or other telephone companies upon equal terms. It is not open to the Skagit company to allege that the Independent company is a competitive company, for as to it the Independent company is only a connecting or extending company. It is not open to

the Pacific company to object on the ground that the Independent company is a competitor, for the connection between the Independent and the Skagit companies is not a connection between competing lines. Furthermore, the Pacific company itself, having no right under its contract to a monopolistic use of the Skagit company's line, has no other or different right than the Independent company has to connect with the Skagit company's line.

(3) Our conclusion further is that the commission has power to order such physical connection as it has ordered in this case under our constitution and statutes, but that it must make such orders as will not discriminate, or favor one company or concern above another. It found in this case that the cost of connection would be $50. However that may be, before its order will be valid it must provide for the payment to the Skagit company of the cost of making the connection, by either the petitioners or the Independent company. It must further provide for such reasonable regulation as will prevent interference between the Independent company and the Pacific company when using the lines of the Skagit company. It must further provide for such reasonable joint rates or tolls as shall be appropriate between the lines of the Pacific company and of the Independent company in conjunction with the Skagit company, for the use of the Skagit company's lines. When such provisions are made, the order of the commission will comply with the letter and spirit of the constitution and of the statute relating to such regulation.

We are not concerned with the reasons given by the learned trial court for its judgment; the order of the commission as it stands is invalid for the reasons stated in our third conclusion herein, and the judgment of the lower court dismissing appellants' action to enforce said order is right. It is therefore affirmed.

MOUNT, MAIN, ELLIS, FULLERTON, CROW, and PARKER, JJ., concur.